## S94A1430. CLARK v. THE STATE.
(454 SE2d 492)

THOMPSON, Justice.

This appeal follows Ricky William Clark's conviction of the offense of felony murder in the shooting death of his wife, Rebecca Diane Clark, with aggravated assault being the underlying felony.[1]

1. Viewed in a light most favorable to the verdict, the evidence showed that police were called to the Efficiency Lodge at 1:30 a.m. to investigate a shooting in room 110. The responding officer was flagged down by the resident manager who informed him that a tenant in room 110 had been shot by her husband. The officer found the victim on the floor of her room in a pool of blood. The defendant was sitting next to her, holding her shoulders, and exclaiming, "I didn't mean to shoot her." The officer observed the defendant push a long-barreled

---

[1] The crime occurred on December 21, 1991. Clark was indicted on July 8, 1992. Trial began on February 7, 1994; a verdict was returned on February 11, 1994, and Clark was sentenced on the same day to life imprisonment. A motion for new trial was filed on February 14, 1994, amended on May 10, 1994, and denied on May 16, 1994. A notice of appeal was filed on May 24, 1994. The case was docketed in this Court on June 20, 1994, and oral argument was heard on October 11, 1994.

gun under a table with his foot. The weapon contained one empty cartridge casing and two live rounds of ammunition.

Earlier that evening, the victim appeared at the door of the resident manager; she was crying, her face was bruised, and she complained of a possible broken hand. The manager tried to console her and urged her not to return to her room. Based on the victim's statements, and other complaints about fights between the Clarks, the manager went to room 110, where she found the defendant on the bed in an apparently inebriated state. The dead-bolt lock had been removed from the door; the defendant admitted removing it because he was afraid his wife would lock him out. The manager told him that she would call the police if she had more trouble with him that night. She then returned to her own apartment. She stated that the victim was afraid to leave and remained there with her for about two hours; she ultimately departed at about midnight.

At about 1:00 a.m., the manager observed the defendant in the parking lot; he stated that he was telephoning 911 because his wife had been shot. The two returned to room 110 together where the manager observed the victim lying face down on the floor, bleeding from a wound in her back. The manager asked what had happened and the defendant replied that they had been wrestling with a gun when it discharged.

The defendant testified in his own defense that he picked up his rifle to secure it in its case after his wife threatened to pawn it. He described the shooting as follows: "I was holding onto [the rifle] with both hands, and I went to push her with my foot to get her off of me, and when I did she went back a little bit. I fell back against the wall and it went off."

An autopsy examination revealed that death had resulted from a single gunshot wound through the left upper chest, which traveled slightly upward and exited through the midline of the back. Considerable bruising and abrasions were present throughout the body; some a week or more old and some less than a day old. A severe sprain or hairline fracture of the left wrist was also present.

The evidence was sufficient to enable a rational trier of fact to find beyond a reasonable doubt that while in the commission of an aggravated assault, defendant caused the death of his wife. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Defendant contends that evidence of two prior altercations between himself and the victim was erroneously admitted in evidence.

A pre-trial hearing was held pursuant to USCR 31.3, to determine admissibility under *Williams v. State*, 261 Ga. 640 (409 SE2d 649) (1991); *Stewart v. State*, 263 Ga. 843 (1) (440 SE2d 452) (1994); and *Maxwell v. State*, 262 Ga. 73 (2) (414 SE2d 470) (1992).

With respect to the first incident, the victim's 17-year-old daugh-

ter testified that in April 1989, she witnessed a fight between her mother and the defendant (her stepfather), during which he held her mother by the throat and threatened to kill her. There was a rifle on the bed. The victim's sister described the victim's physical condition three days later as follows: "chunks of hair had been pulled out of her head; she had bruises, scratches, a black eye."

The second incident occurred six months prior to the shooting. A police officer testified that she responded to a family violence call at the Clark residence. Mrs. Clark told the officer that her husband had beaten her repeatedly in the course of an argument. Her eyes were blackened and swollen; she was bleeding and had a large cut on her forearm. Charges were brought against the defendant under the Family Violence Act.

The proffer was sufficient to establish that the defendant was the perpetrator of the independent acts. The trial court ruled the evidence admissible to show motive and state of feeling between the parties. We agree that the evidence was offered for an appropriate purpose, particularly in light of the defendant's defense at trial that the shooting was accidental. See *Cooper v. State*, 256 Ga. 234 (1) (347 SE2d 553) (1986). There was sufficient probative connection between the crime charged and the prior difficulties to justify admission of the evidence under *Williams*, supra; *Maxwell*, supra; and *Stewart*, supra.

3. The defendant takes issue with the trial court's charge to the jury in several respects.

(a) The trial court properly denied defendant's request to charge on misdemeanor grade involuntary manslaughter (lawful act — unlawful manner), OCGA § 16-5-3 (b).[2] If the gun discharged accidentally in the absence of criminal negligence, then no crime was committed and, as the jury was instructed, acquittal was required. Use of the deadly weapon in any other manner consistent with the evidence negates the theory that a lawful act was committed. Thus, the requested charge was not adjusted to the evidence. See *Bangs v. State*, 198 Ga. App. 404 (401 SE2d 599) (1991).

(b) Defendant asserts error in giving a charge on voluntary manslaughter over his objection. The State contends there was some evidence of provocation, and therefore the charge was authorized. Even assuming error, an erroneous charge on a lesser included offense does not constitute reversible error unless harmful to the defendant. *Hayes v. State*, 261 Ga. 439 (6) (c) (405 SE2d 660) (1991). Defendant has not

---

[2] This Code section provides:

A person commits the offense of involuntary manslaughter in the commission of a lawful act in an unlawful manner when he causes the death of another human being without any intention to do so, by the commission of a lawful act in an unlawful manner likely to cause death or great bodily harm.

demonstrated, nor do we conclude, that he was harmed by the pattern charge on voluntary manslaughter.

(c) Defendant challenges the following pattern jury instruction, on the ground that it was not adjusted to the evidence:

> You may infer that a person of sound mind and discretion intends to accomplish the natural and probable consequences of that person's intentional acts, and if a person of sound mind and discretion, intentionally and without justification, uses a deadly weapon or instrumentality in the manner in which the weapon or instrumentality is ordinarily used, and thereby causes the death of a human being, you may infer the intent to kill. Whether or not you make any such inference is a matter solely within the discretion of the jury.

The basis for defendant's challenge is without merit, as the issue for determination by the jury was defendant's intent in shooting the rifle, and in the context of the charge as a whole, the instruction informed the jury of the legal inferences that may be drawn from the evidence.

Although we acknowledge that the foregoing charge has been upheld by the Court (see *Wood v. State*, 258 Ga. 598 (2) (373 SE2d 183) (1988); *Thompson v. State*, 257 Ga. 481 (6) (361 SE2d 154) (1987)), we take this opportunity to reiterate and to stress what was stated in *Wood*, supra at fn. 2:

> While we find no error in this charge we suggest the better practice is, in the absence of some special request from the jury, not to emphasize particular circumstances such as the use of a deadly weapon and indicate what inferences may arise therefrom. General charges on intent and circumstantial evidence will ordinarily be sufficient.

Any other practice is strongly discouraged.

(d) The court did not err in charging on voluntary intoxication. Although the defendant admitted having consumed alcoholic beverages that night, he denied that he was intoxicated. However, the testimony of the resident manager was to the contrary, and evidence was introduced that defendant's blood alcohol level was .13 percent three hours after the shooting. The charge was adjusted to the evidence.

(e) Defendant stated specific objections to the charge, but articulated no objection that the charge violated *Edge v. State*, 261 Ga. 865 (414 SE2d 463) (1992). Nor did he reserve the right to assert further objections. Appellate review of this claim has been waived. *Wilson v. State*, 262 Ga. 588 (2) (b) (422 SE2d 536) (1992); *McCoy v. State*, 262 Ga. 699, 701 (425 SE2d 646) (1993).

4. Defendant challenges two evidentiary rulings of the trial court. The first was not preserved by proper objection. With respect to the second, defendant asserts that the statement of a defense witness was improperly excluded on hearsay grounds; however, the statement was properly excluded as irrelevant and immaterial. There was no error.

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 13, 1995 —
RECONSIDERATION DENIED MARCH 30, 1995.

*Albert B. Wallace, Stephen B. Wallace II,* for appellant.

*Robert E. Keller, District Attorney, Per B. Normark, Assistant District Attorney, Michael J. Bowers, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Rachelle L. Strausner, Assistant Attorney General,* for appellee.