S97A1263. HAYES v. THE STATE.
(493 SE2d 169)

HINES, Justice.

Tyran Lamont Hayes appeals his convictions for malice murder and possession of a firearm during the commission of a crime in connection with the fatal shooting of Fredy Melvin Chandler II.[1] Passersby spied Chandler's body in a ditch adjacent to Highway 25 in Burke County. He was found lying face down and clutching a set of

---

[1] The crimes occurred on November 20, 1994. On October 23, 1995, a Burke County grand jury jointly indicted Hayes, Nathaniel Terron Barbour, and Christopher Ryan Barbour for Chandler's malice murder, felony murder while in the commission of aggravated assault, and armed robbery as well as possession of a firearm or knife during commission of or attempt to commit murder and armed robbery. Hayes was tried with the Barbours before a jury on February 12-15, 1996, and the jury returned verdicts on the indicted charges for all defendants as well as on voluntary manslaughter as a lesser included offense. Hayes was found guilty of malice murder and possession of a firearm during the commission of a crime. The Barbours were acquitted on all charges. On March 13, 1996, Hayes was sentenced to life imprisonment for the murder and a consecutive five years of incarceration for the firearm possession. Hayes filed a motion for new trial on April 9, 1996, and it was denied on March 4, 1997. The notice of appeal was filed on March 7, 1997, and the appeal was docketed in this Court on April 29, 1997. The case was submitted for decision without oral argument on June 23, 1997.

car keys attached to a frame containing a photograph of a baby. Chandler had sustained a gunshot wound to the head from a shotgun or high powered rifle fired from a distance of one to three feet. Toxicology tests performed on Chandler's body revealed that his blood was negative for drugs.

The State presented evidence that on the Saturday evening two days before Chandler's body was discovered, Chandler met with Gerald Hitchcock after Hitchcock had "beeped" him to arrange to purchase some cocaine. In the early morning hours, the two drove to a pay telephone to call a drug connection. As Hitchcock and Chandler were leaving the pay telephone, they were approached in a car by Hayes and Terron and Christopher Barbour. The three asked Chandler if he knew where they could get marijuana and Chandler indicated he could probably help them. Chandler got in the car with Hayes and the others and left Hitchcock to watch his vehicle. Hitchcock waited more than two hours but Chandler never returned.

Later that morning, Hayes and the Barbours returned to a motel room which they were sharing with two women who had driven from Kentucky with Terron Barbour. Hayes appeared very nervous and stated that he could not believe that he had killed someone for $90. Hayes and the Barbours divided up $90 in cash. Hayes changed his shirt which had flecks of blood on it, and the group went to a restaurant. While there, Hayes related to the women that he had asked Chandler why he sold drugs, and that Chandler, who was standing beside the car, showed Hayes a photograph of a baby and indicated the baby was the reason. Hayes then shot Chandler, Chandler fell to his knees, and "stuff started going everywhere." Hayes explained that he shot Chandler because he was going to rob him and that Chandler had drugs and money in his pockets.

Earlier, on Friday evening, Hayes had mentioned to the group about robbing someone and stated that he knew how to "get some beepers and dope real cheap." Also, in a Saturday night conversation with other friends, Christopher Barbour indicated he needed money in order to return to Kentucky, Hayes inquired about borrowing a gun, and Terron Barbour stated that he had a shotgun in the car in which he and the women had driven from Kentucky. The day after the shooting, Hayes, the Barbours, and the women took their car to a carwash to wash off blood and body particles, and the group left for Kentucky. In Kentucky, Hayes told others that he had shot and killed a man.

At trial, Hayes admitted shooting Chandler, but related a much different version of events. Hayes claimed that he had known Chandler beforehand, that he and the Barbours met with him on the night in question and that Chandler offered to take them to some clubs that were open after hours. Chandler, who had been using drugs, was

driving the car they were in, and began to act "weird" and weave as he was driving. Hayes and Chandler argued over a woman both had been involved with. Chandler attempted to grab Hayes' money. Hayes asked Chandler to pull over, which he did, and the two men got out. Hayes got the car keys, opened the trunk to retrieve a shotgun, and told Chandler that he was going to leave him there on the roadway. Chandler attempted to grab the shotgun from Hayes, Hayes tried to retain control of it, and the gun fired. Hayes denied pointing the weapon at Chandler and claimed that it discharged by accident.

1. The jury was not required to believe Hayes' testimony that the weapon had accidentally discharged. The evidence was sufficient for a rational trier of fact to find that Hayes acted with malice in shooting Chandler and that he was guilty beyond a reasonable doubt of malice murder and possession of a firearm during commission of the murder. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. After a lengthy *Jackson-Denno* hearing, the trial court ruled that Hayes' tape-recorded statement made at the Burke County jail was voluntary. The State then utilized the statement in its cross-examination of Hayes. Hayes contends that the statement was involuntary because he was kept alone in a holding cell for two days prior to the statement and because the day before he had refused to talk to authorities and asked to see a lawyer. However, the record demonstrates that there was nothing extraordinary about Hayes' custody or interrogation, and that prior to his taped statement he was fully advised of his *Miranda* rights and executed a waiver of those rights. Under the totality of the circumstances, the trial court properly found that Hayes' taped statement was freely and voluntarily made. *Fields v. State*, 266 Ga. 632, 633 (469 SE2d 184) (1996).

3. The trial court allowed Gerald Hitchcock to testify about his conversation with Chandler at the time of the initial encounter with Hayes and the Barbours. Hitchcock testified that Chandler told him that he was trying to "hook these guys up," about the magnitude of the proposed drug deal, and that Chandler expected to return shortly. Hayes maintains that the testimony was inadmissible hearsay amounting to reversible error. However, "OCGA § 24-3-1 (b) permits the use of hearsay evidence 'in specified cases from necessity.' . . . An exception will be allowed 'from necessity' where 'necessity' and 'particularized guarantees of trustworthiness' are established. [Cit.]" *McKissick v. State*, 263 Ga. 188, 189 (3) (429 SE2d 655) (1993).

Here, both prerequisites are met. Necessity is established because the statements were made by the victim Chandler who was no longer alive. Furthermore, the victim's statements bore the indicia of trustworthiness because of the circumstances under which they were made. There was no apparent reason for Chandler to lie to

Hitchcock. Moreover, the statements were part of a spontaneous exchange with Hitchcock to explain Chandler's conduct in leaving the scene and to request Hitchcock's assistance.

4. Hayes fails in his contention that the trial court allowed inadmissible hearsay when it permitted GBI Agent McGlaun to testify about statements to him by State's witness Stanton, one of the women Hayes confided in shortly after the shooting, and State's witness Jones, one of the friends Hayes and the Barbours talked with before meeting Chandler.[2] The veracity of Stanton was raised by the defense during its cross-examination of her. Because Stanton's truthfulness was clearly at issue and because she testified at trial and was subject to cross-examination by Hayes, the agent's testimony about Stanton's prior statements, even if showing the statements to be consistent with her testimony, was admissible and not subject to a hearsay objection. *Cuzzort v. State*, 254 Ga. 745 (334 SE2d 661) (1985). State's witness Jones, who also took the stand and was available for cross-examination, testified to a different version of events than he told to McGlaun. Thus, McGlaun's testimony about Jones' inconsistent statements was admissible as substantive evidence. *Gibbons v. State*, 248 Ga. 858 (286 SE2d 717) (1982).

5. The trial court admitted into evidence State's Exhibit 17, a pre-autopsy photograph of the victim's body which showed the victim's massive head wound. Hayes objected that the prejudicial effect of the photograph outweighed any probative value. When the trial court is faced with such an objection, it must exercise its discretion in determining admissibility. *Woods v. State*, 265 Ga. 685, 687 (3) (461 SE2d 535) (1995). Generally, pre-autopsy photographs of the victim are admissible to illustrate the nature and extent of the victim's wounds, and the trial court did not abuse its discretion in admitting the photograph at issue. *Berry v. State*, 267 Ga. 605, 612 (10) (481 SE2d 203) (1997).

6. Nor was it an abuse of the trial court's discretion to deny Hayes a mistrial based on the complaints that the prosecutor repeatedly used leading questions and questions that assumed facts not in evidence. The record does not support the allegation that the prosecutor's questions were premised on matters not in evidence. As to the leading nature of certain of the questions, the trial court has the discretion to allow leading questions on direct examination, when a wit-

---

[2] McGlaun testified that Stanton related certain details about the killing that indicated that Stanton knew what she was talking about, namely, the site of the wound and the fact that the victim had a photograph of a baby in his hand when he was shot. He also testified that Jones related to him that Hayes and the Barbours stated that they needed big money; that they were going to Kentucky the next day; that they asked Jones for a gun; and that Hayes stated that they were going to rob someone named "Monty" or "Montese."

ness is nervous, or reluctant, or hostile, as appeared to be the situations with the witnesses at issue. *Fugate v. State*, 263 Ga. 260, 265 (10) (431 SE2d 104) (1993); *Potts v. State*, 241 Ga. 67, 71 (3) (243 SE2d 510) (1978).

7. The trial court restricted closing argument to 30 minutes each for Hayes and his two codefendants, and refused to allow them to allocate any unused time to each other.[3]

Hayes and his codefendants were being tried for murder, a capital felony. OCGA § 16-5-1; see *Collins v. State*, 239 Ga. 400, 402 (2) (236 SE2d 759) (1977). OCGA § 17-8-73 provides that in cases involving capital felonies, counsel "shall be limited to two hours for each side." In the civil case *Lovett v. Sandersville R. Co.*, 199 Ga. 238, 240 (33 SE2d 905) (1945), this Court construed the virtually identical language of limitation in former Ga. Code § 81-1008 as requiring that the argument of counsel is not to be limited to less than two hours on a side. The holding in *Lovett* has been applied as controlling in a capital felony case to require that "counsel in a capital felony case are entitled, as a matter of right, to two hours on a side in which to argue their case, and the trial [court] has no right in [its] discretion in such a case to limit their argument to a shorter period of time." *Kittles v. State*, 74 Ga. App. 383, 385 (39 SE2d 766) (1946). Compare *Carter v. State*, 263 Ga. 401 (435 SE2d 42) (1993), which involved a challenge under USCR 13.2 to allowing the State additional time for argument.

Thus, the trial court erred, as a matter of law, in limiting Hayes and his codefendants to 90 minutes in which to make their final statements to the jury. The right to make a closing argument to the jury is an important one, and abridgment of this right is not to be tolerated. Harm, requiring that a defendant be given a new trial, is presumed when the right is erroneously denied, and the presumption of harm, although not absolute, is not readily overcome. *Givens v. State*, 264 Ga. 522, 523 (1) (448 SE2d 687) (1994); *McDuffie v. Jones*, 248 Ga. 544, 546 (2) (283 SE2d 601) (1981). The presumption of harm may fall when the denial of the right is not complete and only in those extreme cases in which the evidence of a defendant's guilt is so overwhelming that it renders any other version of events virtually without belief. *Givens*, supra at 523 (1); *McDuffie*, supra at 546 (2).

Here, the trial court illegally infringed upon the right of closing argument by shortening the time permitted to Hayes by statute and then refusing Hayes the unused time of his codefendants. However, the presumption of harm to Hayes is overcome because the evidence

---

[3] Initially, the court indicated it would give each defendant only 20 minutes for closing argument. However, after colloquy with defense counsel and the prosecutor's expressed concern that the defendants were entitled to more time under the Uniform Superior Court Rules, the court allowed each defendant an extra ten minutes of argument.

of Hayes' guilt is so compelling that, in the face of such evidence, his defense is virtually incredible.

8. Hayes' complaint that the trial court erred in giving State's Request to Charge No. 15 because it was improper and incomplete is unavailing.[4] The instruction is a correct statement of the law. *Sands v. State*, 262 Ga. 367, 368 (2) (418 SE2d 55) (1992). Moreover, the court gave additional charges regarding mere presence at the scene as well as detailed instruction on the question of intent.

9. Hayes is likewise unsuccessful in his contention that the trial court erred in failing to give his request to charge on involuntary manslaughter. To begin with, the request contained far more than the elements of involuntary manslaughter; it included two paragraphs regarding the form of the verdict. Moreover, contrary to Hayes' assertion, a charge on lawful act — unlawful manner involuntary manslaughter, OCGA § 16-5-3 (b), was not warranted based on Hayes' own testimony of how the fatal shooting occurred. If the gun discharged by accident, in the absence of criminal negligence, as Hayes testified to at trial, then no crime was committed, and acquittal was required. Use of the shotgun in any other manner consistent with the evidence negates the theory that a lawful act was committed. *Clark v. State*, 265 Ga. 243, 245 (3) (a) (454 SE2d 492) (1995).

10. Based on the foregoing challenges, it was not error to deny Hayes' motion for new trial.

*Judgments affirmed. All the Justices concur, except Benham, C. J., Hunstein and Thompson, JJ., who dissent.*

BENHAM, Chief Justice, dissenting.

Finding myself unable to agree with Division 7 of the majority opinion or with the affirmance of Hayes's conviction, I must respectfully dissent.

The majority opinion finds that overwhelming evidence of guilt made it harmless error for the trial court to limit defendant's closing argument to less time than is provided for by the clear language of OCGA § 17-8-73: "In cases involving capital felonies, counsel shall be limited to two hours for each side." Hayes was indicted along with two other defendants for murder (two counts), armed robbery, and possession of a firearm in the commission of a crime. Each defendant was represented by separate counsel and the trial court, over objection, limited their argument to 30 minutes each, which totaled is 30 minutes less than is provided under the statute.

---

[4] State's Request to Charge No. 15 read:

"Mere presence at the scene is not sufficient to convict one of being a party to a crime, but criminal intent may be inferred from conduct before, during and after the commission of the crime."

Under our constitution, a defendant is guaranteed the right to trial and representation under certain circumstances. See Ga. Const., Art. I, Sec. I, Pars. I, XI, XII, and XIV. The right to be heard is the lifeblood of our constitution and it is a quintessential part of American jurisprudence. The Court of Appeals made that clear in *Kittles v. State*, 74 Ga. App. 383, 385 (39 SE2d 766) (1946) when it said,

> [C]ounsel in a capital felony case are entitled, as a matter of right, to two hours on a side in which to argue their case, and the trial judge has no right in his discretion in such a case to limit their argument to a shorter period of time. It seems to us that the court had no right in its discretion to limit counsel for the defendant in the instant case, in which the defendant was charged with murder, to one hour, and that when he did so he committed reversible error.

Therefore, any meaningful restriction, such as we definitely have here, on this constitutionally guaranteed, statutorily authorized, and judicially sanctioned right must be scrutinized with the utmost of care.

In determining whether a defendant is harmed by an improper limitation on argument, we must look to the facts of the particular case, taking into consideration the gravity of the charges, complexity of the case, number of witnesses, length of trial, conflicts in evidence, and a host of other factors. See 23A CJS 123, Criminal Law, § 1238. The present case was a murder and armed robbery case, the trial of which lasted four days and produced a transcript of 1,096 pages. There were more than two dozen witnesses and sixty-five requests for charge (thirty-nine by the State and twenty-six by the defense). At the beginning of closing argument, defense counsel informed the jury that he had been limited in his argument and that he would be unable to fully outline his contentions. Counsel spent the bulk of his time calling into question the testimony of various witnesses who appeared for the State. There were seven objections made by the State during defendant's closing argument, and the trial court reminded defense counsel on three occasions during closing argument that his time was limited. During one of the State's objections to the defense's argument, after counsel inquired of the trial judge whether the time would be charged to his allotted time, the trial judge stated in the presence of the jury that defendant had agreed to the limitation on his time. Although the defense was based on accident, Hayes's counsel mentioned "accident" only once during closing argument, whereupon the trial judge interrupted his argument and told him he had only five minutes left. No other mention was made of

"accident."

The trial court's error had its genesis in the trial court's misunderstanding as to what the law required: the trial court viewed this case as a non-capital felony when it should have been viewed as a capital felony. That error became more harmful when the trial court, by asserting in the presence of the jury that defense counsel had agreed to the limitation on closing argument, when in fact the limitation had been imposed contrary to the statute and over counsel's objection, destroyed counsel's credibility with the jury. Further harm occurred when the time limitation improperly imposed by the court did not allow defense counsel time to discuss the basic theory of his defense, "accident." When we consider these factors together with such other factors as the length of trial, number of defendants, number of witnesses, multiple charges and number of requested jury charges, it becomes apparent that the limitation on argument resulted in a fundamentally unfair trial.

While the evidence against Hayes was certainly strong enough to convict him, I cannot agree that it was, as the majority opinion states it must be in order to render error harmless, "so overwhelming that it renders any other version of events virtually without belief." That is especially evident in the fact that Hayes's co-defendants, who were alleged to have participated with him in the robbery scheme which led to the victim's death, and to have split the proceeds of the crimes, were acquitted on the same evidence. The trial court's limitation on Hayes's right to closing argument deprived him of a valuable opportunity to press his case to the jury and was harmful error.

I would, therefore, reverse the conviction and order a new trial. I am authorized to state that Justice Hunstein and Justice Thompson join in this dissent.

DECIDED DECEMBER 3, 1997 —
RECONSIDERATION DENIED DECEMBER 19, 1997.

*Stanley C. House,* for appellant.
*Daniel J. Craig, District Attorney, Charles R. Sheppard, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General,* for appellee.