A98A0256. STEPHENS v. THE STATE.
(503 SE2d 311)

SMITH, Judge.

Henry Marvin Stephens and three codefendants were indicted by a Richmond County grand jury on charges of armed robbery and possession of a firearm during the commission of a felony. The incident giving rise to the charges occurred during an undercover drug sale arranged by the Richmond County Sheriff's Department. At trial, the jury acquitted two codefendants and convicted Stephens and one codefendant. Stephens's motion for new trial was denied, and he appeals. Finding no harmful error, we affirm.

1. While Stephens raises the general grounds, his argument on the sufficiency of the evidence is limited to the contention that the State failed to show the funds taken in the robbery were "the property of the Richmond County Board of Commissioners" as alleged in the indictment. Stephens incorrectly asserts that the only evidence in the record merely identified the funds as "official government funds" from the Sheriff's office without stating their source as federal, state, or local government. Another witness clearly identified the money as "Richmond County's."

As a technical matter, the board of commissioners is not identical to the county itself. See *Aetna Cas. &c. Co. v. Shuman*, 237 Ga. 403, 405 (228 SE2d 809) (1976). For purposes of analysis here, we apply the rule that "[i]n an indictment for robbery, ownership of the property taken may be laid in the person having actual lawful possession of it, although he may be holding it merely as the agent of another; and it is not necessary to set forth in the indictment the fact that the person in whom the ownership is laid is holding it merely as agent of the real owner. . . . [O]ne charged with larceny will not be heard to raise nice and delicate questions as to the title of the article

stolen." (Citations and punctuation omitted.) *Cline v. State*, 153 Ga. App. 576, 577 (2) (266 SE2d 266) (1980). See also *Abrams v. State*, 229 Ga. App. 152, 154 (2) (493 SE2d 561) (1997). Accordingly, we find that a rational trier of fact could find from the evidence adduced at trial proof of Stephens's guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. In managing the logistics of closing argument, the trial court determined that the four defendants collectively would be allowed to open and conclude closing argument, but they would be allowed a total of only four arguments, two opening and two concluding, to be allotted as the defendants chose. As the State concedes in its brief, this was error. OCGA § 17-8-71; see generally *Givens v. State*, 264 Ga. 522, 523 (1) (448 SE2d 687) (1994) (multiple defendants, each of whom has not presented evidence, must all be allowed to open and conclude closing argument). While harm to the defendant from this error is presumed, "the presumption is not absolute and the error may be shown to be harmless." *McDuffie v. Jones*, 248 Ga. 544, 547 (2) (283 SE2d 601) (1981).

The evidence in this case showed that Stephens had several telephone conversations with the deputy to arrange a meeting for the purchase of drugs. After the participants in the meeting negotiated terms for some time, one of Stephens's codefendants produced a pistol and announced a robbery. At the codefendant's direction, Stephens took the deputy's firearm from his waistband and pointed it at him. Stephens turned the pistol on two other officers as they entered the room, and he was shot. Another deputy also testified that Stephens exclaimed, " 'Why did you shoot me all these times? I wasn't going to shoot anybody. I was just pointing the gun.' " No cocaine was found by the officers after the arrests, but a search of a cloth bag brought into the room by one of Stephens's codefendants revealed, among other items, a roll of duct tape, rubber gloves, and a knit cap with holes cut in it.

The incident was recorded on audio and video tape. While the videotape ended abruptly before the officers entered the room, one of the officers who monitored the transaction from an adjoining room believed that the equipment was accidentally disconnected as they rushed to the aid of their fellow officer after realizing a robbery was taking place. An FBI expert in audio and video tapes testified that the tape had not been altered and that the sudden stoppage on the tape was consistent with its being stopped or power being removed from the machine. The audio and video tapes were played for the jury. Contrary to Stephens's assertion at trial, the videotape clearly shows him removing the pistol from the officer's waistband and pointing it at him.

Several days after the incident and after his release from the

hospital, Stephens gave a lengthy and detailed statement to officers who interviewed him in the jail infirmary. In this 36-page statement, Stephens told the officers that "there was no drugs involved anyway, see," because one of his codefendants planned to repay money he owed Stephens by means of robbing a drug dealer. They were "just taking his money for the simple fact that he felt that since he was a drug dealer if he took his money . . . who was he gonna tell." Stephens agreed that before they "even went to the room, the plan was to rob a dope dealer." Stephens stated that he provided the gun for the robbery. He brought it to his codefendant in the room, patted the deputy down, took his firearm, and was backing away when he was shot. He reiterated at another point that "the main plan was just basically to get the money" and that they had no drugs but planned "from the get go" to commit a robbery.

As in *McDuffie*, supra at 548, no correlation can be discerned between opening or concluding closing argument and conviction or acquittal. Two of Stephens's codefendants argued before the State; one was acquitted and one convicted. Stephens and the third codefendant argued after the State; Stephens was convicted while his codefendant was acquitted. "This defendant was not denied the right to argue his case to the jury and in fact did so. He was merely prohibited from making the closing argument. The co-defendant who had the closing argument was also found guilty by the jury. In view of the evidence against the defendants, it is highly probable, if not a certainty, that the error did not contribute to the conviction. [Cit.] Thus, a new trial is not required by the trial court's harmless error." Id.

In view of the lack of correlation between the defendants' position in closing argument and conviction or acquittal, as well as the overwhelming evidence implicating Stephens in the robbery, including video and audio tape of the incident and his own statement, we conclude that this is one of those relatively rare occasions when the trial court's error was harmless. See also *Hayes v. State*, 268 Ga. 809, 813-814 (7) (493 SE2d 169) (1998); *Stanley v. State*, 195 Ga. App. 706, 708-709 (9) (394 SE2d 785) (1990).

3. In his final enumeration of error, Stephens contends the trial court erred in finding his recorded statement free and voluntary. At a *Jackson-Denno* hearing, Stephens testified that he was in pain and bleeding profusely at the time he gave the statement and did not remember much about the day he gave it. He testified that he was given medication three times a day at the hospital, although he did not know what the medication was.[1] He stated that his medication

---

[1] Stephens's counsel moved for funds to hire a medical doctor to examine Stephens's medical records and to testify as to the possible effects of medication, but that motion was

was changed at least three times up until a month before trial.

At the time he gave the statement, Stephens had been released from the hospital to the jail infirmary, and all medical equipment such as catheters and IVs had been removed. The GBI agent who questioned Stephens at the jail testified that, at the beginning of the statement, he reviewed the standard GBI waiver of counsel form with Stephens. He played the tape recording of the statement for the trial court. The GBI agent testified that he did not correct Stephens's statement, that he did not deny him any request, and that Stephens never requested an attorney. He acknowledged that he saw some blood on Stephens and also that Stephens made some contradictory statements and apparently was "a little confused." But he also stated that Stephens did not appear to be incoherent and understood what he was doing, that he was aware of his surroundings, and that he knew he was being questioned regarding the incident. The trial court concluded that Stephens "may have had a selective memory, but he seemed to remember and know what he was doing, and the officer said he knew what he was doing. I'm going to let the statement go to the jury."

"Factual and credibility determinations made by a trial judge after a suppression hearing are accepted by appellate courts unless clearly erroneous." (Punctuation omitted.) *Powell v. State*, 252 Ga. 297, 298 (2) (313 SE2d 90) (1984) (statement held voluntary when defendant questioned while sedated in hospital after being shot in robbery attempt). See also *Hood v. State*, 157 Ga. App. 282, 283-284 (3) (277 SE2d 261) (1981) (defendant shot during bank robbery and questioned while on stretcher in hallway of hospital awaiting treatment). Here, Stephens was not questioned by officers until after his release from the hospital. He indicated that he understood his rights and never requested an attorney or a halt in the questioning. Compare *Mincey v. Arizona*, 437 U. S. 385, 398 (98 SC 2408, 57 LE2d 290) (1978), cited in *Green v. State*, 154 Ga. App. 295, 297 (1) (B) (267 SE2d 898) (1980) (statement involuntary when wounded defendant, interrogated in intensive care ward, repeatedly asked that interrogation stop and requested lawyer). The trial court heard testimony from both Stephens and the GBI agent and listened to the recorded statement itself. Under these circumstances, we cannot say that the trial court's admission of Stephens's statement was clearly erroneous.

*Judgment affirmed. Johnson, P. J., and Senior Appellate Judge Harold R. Banke concur.*

---

denied. Stephens's attorney did not introduce the records into evidence or otherwise show the type of medication administered to Stephens.

DECIDED JUNE 22, 1998.

Sam B. Sibley, Jr., for appellant.
Daniel J. Craig, District Attorney, Charles R. Sheppard, Assistant District Attorney, for appellee.