## S01A0126. FELDER v. THE STATE.
### (545 SE2d 918)

THOMPSON, Justice.

J. T. Felder was convicted of malice murder and possession of a knife while in the commission of a felony, in connection with the stabbing death of Sammy Watkins.[1] On appeal from the denial of his motion for new trial, Felder challenges several evidentiary rulings of the trial court. Finding no error, we affirm.

On the day in question, an argument ensued between Felder and Jennifer Harris at the site of a neighborhood barbeque. Felder left the area and entered a friend's home where he picked up some chicken for the cookout, as well as a large butcher knife, both of which he had left there earlier. He returned to the site of the barbeque and again encountered Jennifer Harris. The two resumed arguing and exchanging profanities, and Felder produced the knife. Several eyewitnesses to the event testified that Sammy Watkins approached Felder and asked what was wrong, whereupon Felder, without provocation, stabbed the unarmed victim. Watkins later died from a single stab wound which pierced his heart and lung.

1. The evidence was sufficient to enable a rational trier of fact to find Felder guilty beyond a reasonable doubt of malice murder. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Felder claims that his custodial statements were improperly admitted at trial.

At a *Jackson v. Denno* hearing, it was established that Felder was arrested and taken into custody approximately two hours after the stabbing. He appeared to the officers to be intoxicated, and was bruised from an apparent beating following the stabbing. *Miranda* warnings were administered, but because Felder seemed incoherent, no attempt was made to obtain a statement that night, and he was placed in a holding cell overnight. Late the next morning, after ascertaining that Felder appeared to be lucid and no longer intoxicated,

---

[1] The crime occurred on February 26, 1998. An indictment was returned on March 10, 1998, charging Felder with malice murder, aggravated assault against Jennifer Harris, and two counts of possession of a knife while in the commission of a felony. The State served notice of intent to present matters in aggravation of sentencing and sought enhanced sentencing under OCGA § 17-10-7, based on six prior convictions, including the crime of murder and three other serious violent felony offenses. Trial commenced on September 13, 1999, and on September 16, 1999, Felder was found guilty by a jury of malice murder and one count of weapon possession; he was acquitted of the remaining counts. He was sentenced on the same day to life imprisonment without possibility of parole, plus five consecutive years. A motion for new trial was filed on September 17, 1999, and amended on September 5 and 13, 2000. The motion was denied on September 15, 2000, and a notice of appeal was filed on the same day. The case was docketed in this Court on October 6, 2000, and was submitted for decision on briefs on December 4, 2000.

the officers met with him again.[2] At that time, he was readvised of his *Miranda* rights, executed a waiver of counsel, and agreed to give a custodial statement.

On appeal, he submits that because he was bruised and in pain, his capacity to understand his rights was diminished, thus rendering his custodial statement involuntary. The investigating officer testified that Felder did complain of some pain and asked for an aspirin, which was provided. Prior to taking his statement, the officers also apparently offered to take Felder to a hospital for examination, but he declined to go. The officer specifically testified that he did not believe Felder was in so much pain that he could not participate in the interview, and that he had no difficulty understanding the questions posed. Further, Felder testified that he was well treated during the interview and that he received all the medical attention he requested.

Considering the totality of the circumstances, the trial court correctly concluded that Felder's ability to understand *Miranda* warnings and consent to an interview was not in any manner impaired, and that his custodial statement was freely and voluntarily given. See *Lee v. State*, 270 Ga. 798 (2) (514 SE2d 1) (1999).

3. Felder submits that the trial court erred in allowing the State to offer evidence that in 1988, he pled guilty to murder in Houston, Texas, and served eight years in prison. He claims that the State failed to meet its burden of establishing that the two offenses are sufficiently similar and that the prior offense was offered for a proper purpose under the standard of *Williams v. State*, 261 Ga. 640 (2) (409 SE2d 649) (1991).[3]

A pretrial hearing was held pursuant to Uniform Superior Court Rule 31.3 (B) to determine the admissibility of evidence of Felder's previous murder conviction. At the hearing, the prosecution informed the court that it intended to offer the testimony of a Texas homicide detective to establish that Felder pled guilty and was convicted of the 1988 murder. The State argued that the independent crime was similar to the crime charged in that: (1) both victims were males unrelated to the defendant; (2) both victims were unarmed; (3) both incidents arose from a verbal dispute; (4) in both cases, the murder weapon was a common kitchen knife with a long blade; (5) both victims died of stab wounds to the heart; and (6) the defendant in both cases claimed the victim was the aggressor. The trial court made specific findings that the two offenses were sufficiently similar such that

---

[2] A blood alcohol test administered that morning later proved to be negative for alcohol.
[3] Although it is also necessary under *Williams* for the State to make the affirmative showing that the accused committed the independent offense, Felder concedes the identity prong of *Williams*.

proof of the independent offense tends to show commission of the crime charged, and that evidence of the former crime was being offered for a proper purpose — to show course of conduct and bent of mind. Although Felder does not contest identity, the court also determined that the accused committed the prior offense.

At trial, the testimony of the Texas detective was preceded with a careful limiting instruction that the jury may choose to consider the evidence *if* they find that Felder committed the prior offense *and* that it is sufficiently similar to the crime charged, *but only* for the limited purpose of showing bent of mind or course of conduct. The detective went on to testify to the details of the prior transaction and a certified copy of Felder's 1988 conviction was introduced.

The evidence was properly admitted under *Williams*, and its progeny.

4. Felder filed notice in accordance with USCR 31.1 and 31.6 of his intent to offer evidence of specific acts of violence perpetrated against him by the victim. These consisted of several instances when the victim directed verbal threats and profanities against Felder.

> Although a defendant can introduce evidence of a victim's prior acts of violence [cit.], he must first make a prima facie showing that the victim was the aggressor, that the victim assaulted him, and that he was honestly seeking to defend himself. [Cit.] In other words, defendant must demonstrate that the prior acts would be relevant to a defense of justification.

*Lewis v. State*, 268 Ga. 83, 84 (2) (485 SE2d 212) (1997).

A hearing was held pursuant to USCR 31.6 (B), at which Felder testified that when he returned to the site of the barbeque with his chicken and knife in hand, he resumed his conversation with Jennifer Harris; that the victim approached, verbally threatened him, raised his fist, and swung at him; and that he (Felder) stepped back, and defended himself with the knife.

The trial court concluded that while the defense offered evidence that the victim was the aggressor and had assaulted Felder, it did not make a prima facie showing that the use of deadly force was justified under the circumstances, i.e., that the defendant was honestly trying to defend himself against the unarmed victim. The court did not err in excluding evidence of prior acts of violence by the victim. *Lewis*, supra at 84 (2) (verbal threat and fisticuffs by an attacker did not justify use of deadly force). See also *Haynes v. State*, 234 Ga. App. 272 (2) (507 SE2d 151) (1998).

5. At a hearing outside the presence of the jury, the court considered the admissibility of several pre-incision and post-incision

autopsy photographs of the victim, over defense objections that the former were repetitive, and the latter were unduly gruesome and prejudicial.

The court eliminated two pre-autopsy photographs as redundant and allowed the introduction of two others as probative of the position of the body when the wound was inflicted, and the measurement of the wound. "Pre-incision photos such as the ones currently at issue which depict the location and nature of the victim's wound[ ] are admissible because they are relevant and material." *Rucker v. State*, 270 Ga. 431, 433 (4) (510 SE2d 816) (1999). See also *Ucak v. State*, 273 Ga. 536 (3) (544 SE2d 133) (2001).

As for the post-autopsy photographs, the trial court noted that there had been conflicting testimony as to the type of weapon used and the manner and height from which the wound was inflicted. The court admitted four post-incision photographs as necessary to prove the type of weapon used, angle and location of the wound, and length of the knife blade. "A photograph which depicts the victim after autopsy incisions are made . . . will not be admissible unless necessary to show some material fact which becomes apparent only because of the autopsy." *Brown v. State*, 250 Ga. 862, 867 (5) (302 SE2d 347) (1983). We have reviewed the exhibits in question and agree that they were relevant and probative of the disputed question of the manner in which the wound was inflicted, and that this information was not otherwise apparent from the pre-autopsy photographs. Therefore, the post-incision autopsy photographs were admissible under the exception in *Brown*, supra.

Although Felder argues that the pathologist used only two of the four post-autopsy photographs to illustrate his testimony and the significance of the others was not explained to the jury, no such objection was made in the trial court and will not be considered for the first time on appeal. See *Clark v. State*, 265 Ga. 243 (4) (454 SE2d 492) (1995).

6. Any challenge to the untimely production of the autopsy report has not been preserved for appellate review. Id.

*Judgment affirmed. All the Justices concur.*

DECIDED APRIL 30, 2001 —
RECONSIDERATION DENIED JUNE 4, 2001.

*Jeffrey L. Grube*, for appellant.
*Kelly R. Burke, District Attorney, Amy E. Smith, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith,*

*Senior Assistant Attorney General, Daniel G. Ashburn, Assistant Attorney General*, for appellee.