300 Ga. 471
FINAL COPY

S16A1754. ENGLISH v. THE STATE.

MELTON, Presiding Justice.

Following a jury trial, James English appeals his convictions for the malice murder of Ricky Payne and first degree arson.[1] English contends that the trial court committed plain error by not providing a jury charge regarding the corroboration of confessions. For the reasons set forth below, we affirm.

1. Viewed in the light most favorable to the verdict, the evidence shows that, on the night of April 25, 2009, emergency personnel discovered Payne's burned corpse on a couch in a home that had been set on fire, as well as blotches of Payne's blood throughout the house and on the front porch. The State Fire

---

[1] In June 2009, English was indicted for the malice murder of Payne and first degree arson. Following a jury trial ending on June 17, 2010, English was found guilty of both counts. English was sentenced to life imprisonment for malice murder plus ten years to run concurrently for the first degree arson charge. On July 12, 2010, English filed a motion for a new trial, amended on July 6, 2015. The trial court conducted a hearing on the motion on September 3, 2015, and the trial court denied English's motion for new trial on March 14, 2016. English filed a timely notice of appeal, and his case, submitted for decision on the briefs, was docketed to the September 2016 term of this Court.

Marshal determined that the fire was not accidental, and a GBI medical examiner concluded that Payne died as a result of blunt force trauma to the head rather than smoke inhalation or burns. Clothing samples from Payne tested positive for an ignitable fluid, and both a lighter and lighter fluid were recovered from the house.

Billy Humphrey owned the house that burned, and, in the hours prior to the fire, he drank with Payne and Lori Kirkpatrick before leaving to attend a party at Thomas O'Neal's house. Shortly after dark, Kirkpatrick also left Humphrey's home to attend the same party, and she encountered English in Humphrey's yard. Kirkpatrick left after telling English about O'Neal's party, and only English and Payne remained in Humphrey's home.

At about 10:00 p.m., English arrived at O'Neal's house with his brother, Eric, and told O'Neal, James Howell, and Michael Carrigg, "I'm here if anybody's looking for me. Tell them I've been here all the time." Howell testified that English told him he had "just killed a man," that the man had argued and wrestled with him, and then he "had hit him up side the head with a bat and laid him on the couch and set him on fire." English subsequently told Carrigg similar information, and English proved his claim by showing Howell

2

and Carrigg the crime scene, where the fire department was busy extinguishing the fire.

On May 6, 2009, Howell and Carrigg called an investigative hotline and informed the GBI about what English told them on the night of the fire. The pair met with a GBI agent, relayed the information, and then agreed to wear audio and video recording devices for investigative purposes. Howell and Carrigg then met with English. On tape, English stated to Howell and Carrigg that investigators had no DNA evidence and no eyewitnesses, that English had withheld telling GBI officers in a prior interview that Howell and Carrigg were at O'Neal's house on the night of the fire and murder, that English wanted O'Neal to tell police English had been at his house at a certain time, and that his uncle offered to buy him a bus ticket to Minnesota. English also asked Howell and Carrigg to create an alibi that they saw English at O'Neal's house at the time of the house fire. Additionally, at the conclusion of the video, Howell and Carrigg confirmed to each other, after English had left, that English admitted to the murder during the course of their meeting. Howell and Carrigg nonetheless expressed concern about whether GBI investigators would be able to hear the

same because he "was kind of whispering when he said it."[2]

GBI investigators reviewed the audio and visual recording and arrested English for murder. English then gave a formal statement to the police. After waiving his Miranda rights, English told police that he argued with Payne in Humphrey's home, that the argument turned violent, and that he struck Payne in the head with an object multiple times. After Payne fell on the sofa, English left the home, cleaned himself up, and returned to make sure Payne was okay, and noted that Payne had been bleeding from his head. English claimed that he then went to O'Neal's house. English did not admit to law enforcement officials that he killed Payne or started the fire. Later, on May 11, 2009, officers interviewed English in the jailhouse and received essentially the same information.

This evidence was sufficient to enable the jury to find English guilty of the crimes for which he was convicted beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

---

[2] There are instances in which the recordings are obscured by background noise and the conversation is inaudible. There is no audible confession to the murder, itself, on the recording.

2. In his sole enumeration of error, English contends that the trial court plainly erred by not instructing the jury regarding the necessity of corroborating evidence for confessions under former OCGA § 24-3-53. This statute states:

> All admissions shall be scanned with care, and confessions of guilt shall be received with great caution. A confession alone, uncorroborated by any other evidence, shall not justify a conviction.[3]

English's trial counsel neither requested a charge based on this statute, nor objected to the lack of that charge or any alternative charges. Nonetheless, "under OCGA § 17-8-58 (b), appellate review for plain error is required whenever an appealing party properly asserts an error in jury instructions," as English has done in this case. State v. Kelly, 290 Ga. 29, 32 (1) (718 SE2d 232) (2011). There are four prongs in the test for plain error, each of which must be satisfied:

> First, there must be an error or defect — some sort of deviation from a legal rule — that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in

_____

[3] This provision is now codified at OCGA § 24-8-823. English's trial occurred in 2010, and therefore predated the new Evidence Code and OCGA § 24-8-823, which were made effective on January 1, 2013.

the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error — discretion which ought to be exercised only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.

(Punctuation omitted.) Stanbury v. State, 299 Ga. 125, 129 (2) (786 SE2d 672) (2016) (citing Kelly, supra, 290 Ga. at 33 (2) (a)).

As an initial matter, it is clear that most of English's statements are admissions, not confessions. "[A] mere incriminating statement is made where the accused, though admitting to damaging circumstances, nonetheless attempts to deny responsibility for the crime charged by putting forward exculpatory or legally justifying facts." Robinson v. State, 232 Ga. 123, 126 (2) (205 SE2d 210) (1974). In other words, in an admission, "only one or more facts entering into the criminal act are admitted," while in a confession, "the entire criminal act is confessed." (Citation and punctuation omitted.) Lowe v. State, 267 Ga. 180, 181-182 (4) (476 SE2d 583) (1996). Here, English admitted to law enforcement officials that he hit Payne over the head with an object multiple times, but he never said he killed Payne or set the house on fire. English instead claimed that he left the home to clean up after the fight and returned to check on Payne

6

before leaving for O'Neal's house. Thus, English admitted "only some subordinate fact . . . from which the jury may or may not [have inferred] guilt," and, therefore, English's statements to law enforcement officers were not confessions as to Payne's murder and the arson. (Citation, punctuation and emphasis omitted.) Robinson, supra, 232 Ga. at 126 (2); Lowe, supra, 267 Ga. at 181-182 (4).

Even if we consider, without deciding, that other statements made by English to witnesses such as Howell, Carrigg, and O'Neal were confessions, English cannot satisfy the third prong of the plain error test by showing that the error affected the outcome of the trial court proceedings. See Rashid v. State, 292 Ga. 414 (7) (737 SE2d 692) (2013).[4] Here, there was more than ample corroborating evidence at trial. In addition to English's own incriminating statements to police, Kirkpatrick confirmed that English was alone with Payne shortly before the murder, a neighbor of Humphrey's saw English flee through her yard shortly before personnel arrived to combat the house fire, and English

---

[4] Compare Hamm v. State, 294 Ga. 791 (756 SE2d 507) (2014), in which a request was made for a corroboration of confessions charge, and the request was declined by the trial court.

asked Howell and Carrigg on a recorded tape to fabricate an alibi defense for the time of the crime. English also told Howell and Carrigg on tape that he hid information about Howell and Carrigg from investigators during his custodial interview, that investigators lacked eyewitnesses or DNA evidence, and that his uncle said he could send English a bus ticket to Minnesota. Howell and Carrigg testified that English told them that he had fought with Payne in the house, which he also told investigators. English told both Howell and Carrigg and investigators that he had hit Payne in the head with an object, and he also told Howell and Carrigg that he set the couch in the home on fire. Howell and Carrigg further testified that English directed them to the scene of the burned house on the night of the murder and fire. Forensic evidence also corroborated English's statements as relayed by Howell and Carrigg, as Payne's clothing tested positive for accelerants, Payne's death was ruled not accidental, and a medical examiner testified that Payne died due to blunt force trauma to the head. Therefore, corroboration was extensive, and the trial court proceedings were not likely affected.

Judgment affirmed. All the Justices concur.

Decided January 23, 2017.

Murder. Dodge Superior Court. Before Judge Wall.

Tyler R. Conklin, for appellant.

Timothy G. Vaughn, District Attorney, Christopher C. Gordon, Assistant District Attorney; Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Michael A. Oldham, Assistant Attorney General, for appellee.