303 Ga. 491
FINAL COPY

S18A0193.  MITCHELL v. THE STATE.

BOGGS, Justice.

Lewis Mitchell, Jr., was convicted of malice murder, aggravated assault, and two counts of possession of a firearm during the commission of a felony, in connection with the killing of Antonio Jermaine Mitchell ("Jermaine")[1] and the wounding of Desmond Jones.[2] His amended motion for new trial was denied, and he appeals, asserting that the evidence was insufficient, that the trial court erred in allowing a State's witness to be questioned as a hostile witness, and that the trial court erred in allowing speculative testimony from a forensic biologist.

---

[1] No apparent relation to the appellant.

[2] The crimes occurred on July 5, 2009. On January 29, 2010, a Lowndes County grand jury indicted Mitchell for malice murder, aggravated assault, armed robbery, and two counts of possession of a firearm during the commission of a felony. The State elected not to proceed on the armed robbery count. Mitchell was tried before a jury from January 31-February 3, 2011. The jury found Mitchell guilty on all remaining counts, and he was sentenced to life imprisonment plus 30 years. Mitchell's third amended motion for new trial was denied on December 2, 2016, his notice of appeal was filed on December 15, 2016, and the case was docketed in this Court for the term beginning in December 2017. The case was submitted for decision on the briefs.

As part of the last enumeration, he also asserts ineffective assistance of counsel. For the reasons stated below, we affirm.

Construed to support the verdict, the evidence showed that Cheryl Core was Mitchell's girlfriend; she and her sister, Aianza Wheeler, lived with Mitchell.[3] After the women performed at a bachelor party, which Jones attended, Core became irate because she believed they had not been paid enough. The next evening, July 4, the two women, Mitchell, and Mitchell's friend Lorenzo Countee met and planned to rob Jones in order to get the money they believed they were owed. Core texted Jones, and arranged to meet him and his friend, Jermaine, at a nearby apartment complex. Mitchell drove his father's truck to the apartment complex, and Core and Wheeler got out of the truck some distance away and walked into the complex in order to avoid suspicion. The women then met the two victims, entered their SUV, and drove to a nearby gas station then back to the apartment complex, ostensibly to meet a nonexistent sister but in reality to facilitate the robbery. While the victims and the women were sitting in the SUV talking, "the shooting started happening" and the

---

[3] Before Mitchell's trial, Core pleaded guilty to robbery and aggravated assault and Wheeler pleaded guilty to robbery, but they had not been sentenced when they testified.

women fled. Mitchell called the mother of his child to retrieve the truck, and then they all went to church. Mitchell told Core, "I shot two n-----s basically for 23 dollars." Core also testified that Mitchell threatened her, saying, "if anybody said anything, I don't have a problem with killing anybody else." Wheeler testified, "When [Mitchell] came into the house he said he can't believe he killed him two n-----s. He can't wait to make the news."

Countee's girlfriend, Ashley Staten, testified that she was riding in Mitchell's gray Ford truck with Core, Wheeler, Countee, and Mitchell, whom she knew. When the others began talking about robbing someone, and Core was apparently arranging a meeting by phone, Staten became nervous. When Mitchell got out of the truck, put on a ski mask and jacket, and pulled a "big, black gun" out of a pillowcase, Staten got out of the truck and ran away. When she saw Mitchell later, he said that he "had shot him two n-----s."

Jones was shot five or six times in the hand, jaw, shoulder, back, and neck. He passed out, but regained consciousness and called 911. Police arrived in response to the call, but Jermaine was already dead. The medical examiner testified that Jermaine was shot five times, severing his spine and damaging his carotid artery. The cause of death was gunshot wounds to the chest and neck. A

3

police detective found 11 expended Wolf brand .223 Remington cartridge cases on the scene, all fired from the same firearm. Police found a trash bag outside Mitchell's former apartment nearby containing a box of Wolf brand .223 Remington cartridges, receipts in Mitchell's name, and a high school report card with Mitchell's name on it.[4] Police photographed and recorded the license number of a gray Ford pickup truck on the scene and traced it to Mitchell's father. They also found a ski mask and a jacket on top of an air conditioning unit under a nearby building. A set of keys in the jacket pocket included an auto parts reward card registered to Mitchell or his father. Mitchell acknowledged to police that the keys were his, but said he didn't know how they ended up at the crime scene. A witness for the defense testified that he heard what he first thought were firecrackers because it was the Fourth of July, then saw a man in a dark-colored jacket standing by the driver's door of a red SUV, and saw a passenger jump out and flee. Only when he heard a woman screaming did he realize, "I've just seen a shooting." He described the shooter as wearing a dark top and something on his head that could have been a hoodie or a mask.

---

[4] Evidence was presented that Mitchell, Core, and Wheeler had lived at that apartment until approximately a week before the murder.

1. Mitchell first contends that the evidence was insufficient because no witness saw Mitchell fire a weapon, no weapon was ever recovered, and no fingerprint or DNA evidence supported the convictions. He asserts that an uncorroborated admission is insufficient to support a conviction, citing former OCGA § 24-3-53, in effect at the time of trial,[5] Miller v. State, 268 Ga. 1 (485 SE2d 752) (1997), and Burns v. State, 188 Ga. 22, 27 (2) (2 SE2d 627) (1939). While Mitchell fails to note the distinction between a confession and an admission, see, e.g., English v. State, 300 Ga. 471, 473-474 (2) (796 SE2d 258) (2017), the record does not support his contentions in any event.

Viewed in the light most favorable to the verdict, the evidence of Mitchell's participation in the crime is sufficient to support his convictions. In addition to his statements to multiple witnesses, he was placed at the scene by co-defendants as well as other witnesses and evidence. One witness saw him don a mask and jacket and take out a "big, black gun" immediately before the shooting; a mask and jacket were recovered from the scene, with Mitchell's keys in the pocket. He discussed committing the robbery beforehand in the presence

---

[5] This Code section was carried forward, unchanged, as OCGA § 24-8-823 of the new Evidence Code.

of three witnesses, and the truck described by these and other witnesses was recovered from the scene and was registered to Mitchell's father. A trash bag outside of Mitchell's former apartment contained a box of the same brand and caliber of ammunition used in the murder, along with various personal papers in Mitchell's name. Whether his three statements to witnesses that he shot two people amounted to confessions or merely admissions, other evidence was sufficient corroboration. "Although an uncorroborated confession cannot support a conviction under OCGA § 24-3-53, corroboration of a confession in any particular satisfies the requirements of the statute." (Citations and punctuation omitted.) Miller, supra, 268 Ga. at 2. "As long as there is some competent evidence, even though contradicted, to support each fact necessary for the state's case, the jury's verdict will be upheld." (Citation omitted.) Jackson v. State, 271 Ga. App. 278, 280 (1) (a) (609 SE2d 207) (2005). The evidence was sufficient under Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Mitchell contends that the trial court erred in allowing the mother of his child to be questioned by the State as a hostile witness. This witness was called by the State and testified that she could remember talking to the police, but

could not remember anything she said to them. She avoided responding to the State's question regarding whether she had visited appellant approximately 55 times in jail, then when asked, "You'd rather not be here today, would you?" responded, "Okay." The State requested that she be ruled a hostile witness, and the trial court stated, "Well, I'll just give you some latitude, [counsel], and we'll just see how it goes." The witness was then asked if she was reluctant to testify; she responded, "I'm not testifying," reiterated that she did not remember what was said in her police interview, and agreed that she had "volunteered very quickly that [she] didn't give a written statement." A short colloquy ensued during which Mitchell's counsel acknowledged, "I think he's got a right, I guess, to ask about the statements." The trial court never ruled explicitly that she was a hostile witness, but declared, "I'll let you proceed and you can lead the witness." In response to the State's further questions, the witness said that she remembered nothing of what she told police investigators.

Citing Hayes v. State, 268 Ga. 809 (6) (493 SE2d 169) (1997), Mitchell asserts that the State must demonstrate that "the witness is nervous, reluctant, *and* hostile" (emphasis supplied) before the trial court has discretion to allow leading questions. This is not a correct statement of the law. Hayes states rather

that "the trial court has the discretion to allow leading questions on direct examination, when a witness is nervous, *or* reluctant, *or* hostile." (Citations omitted; emphasis supplied.) Id. at 812-813 (6). When a witness "demonstrated a reluctance to tell what [she] knew about the shootings . . . the trial court had great latitude to permit the assistant district attorney to treat [the witness] as a hostile witness and propound leading questions." Knight v. State, 266 Ga. 47, 49 (4) (b) (464 SE2d 201) (1995). "It would be a rare case in which the trial court's exercise of discretion on this issue would warrant reversal." Fugate v. State, 263 Ga. 260, 265 (10) (431 SE2d 104) (1993); see also former OCGA § 24-9-63. Here, the witness obviously was reluctant to testify, and the trial court did not abuse its discretion.

3. At trial, the State called a forensic biologist who testified that she compared samples taken from the ski mask recovered from the scene with the DNA profiles of Mitchell, Wheeler, and Jermaine, and the DNA found on the mask did not match any of the known samples. The prosecutor then asked if it was possible that Mitchell had worn the mask, and the witness responded that it was possible. When asked "how can that be?," the witness responded that normally saliva would be deposited on a mask by talking, sneezing or coughing,

8

and agreed that sometimes she received "masks with no saliva on them." The witness agreed with the prosecutor's statement that she could testify only that she found no saliva belonging to Mitchell, but that she "cannot exclude that he could have worn it."

Mitchell contends that the trial court erred in allowing the witness to testify that the absence of Mitchell's DNA on the ski mask recovered from the scene did not rule out the possibility that he wore it. He asserts that the "specific evidence . . . proves that Lewis Mitchell, Jr. did not wear the ski mask because his DNA was not on it." But Mitchell failed to raise any objection to the witness' testimony at trial, and this issue is therefore waived. Butts v. State, 273 Ga. 760, 769 (20) (546 SE2d 472) (2001).[6] Moreover, "[i]n criminal cases, the opinions of experts on any question of science, skill, trade, or like questions shall always be admissible; and such opinions may be given on the facts as proved by other witnesses." Former OCGA § 24-9-67.[7] Testimony regarding

---

[6] The Attorney General correctly notes that the plain error rule set forth in OCGA § 24-1-103 (d) was not in effect at the time of Mitchell's trial in 2011.

[7] This provision was carried forward essentially unchanged into Georgia's new Evidence Code as OCGA § 24-7-707. See Davis v. State, 301 Ga. 397, 407 (6) (d) n. 10 (801 SE2d 897) (2017).

reasons for the presence or absence of DNA on a sample falls within that scope. See, e.g., Bates v. State, 293 Ga. 855, 857 (1) (750 SE2d 323) (2013) (forensic biologist testified to reasons for absence of DNA evidence).

To the extent that Mitchell, in one sentence as part of this enumeration, raises the contention that his trial counsel was ineffective in failing to object to this testimony, he has failed to meet his admittedly heavy burden, see Kimmelman v. Morrison, 477 U. S. 365, 382 (II) (C) (106 SCt 2574, 91 LE2d 305) (1986), to show that his lawyer performed his duties at trial in an objectively unreasonable way, considering all the circumstances, and in the light of prevailing professional norms. Strickland v. Washington, 466 U. S. 668, 687-688 (III) (A) (104 SCt 2052, 80 LE2d 674) (1984).[8] Mitchell failed to question his trial counsel on this point at the hearing on his motion for new trial, and "trial counsel's decisions are presumed to be strategic and thus insufficient to support an ineffective assistance of counsel claim." (Citations and punctuation omitted.) Bright v. State, 292 Ga. 273, 275 (2) (a) (736 SE2d 380) (2013).

---

[8] "Failure to satisfy either prong of the Strickland test is sufficient to defeat a claim of ineffective assistance, and it is not incumbent upon this Court to examine the other prong." (Citation and punctuation omitted.) Smith v. State, 296 Ga. 731, 733 (2) (770 SE2d 610) (2015).

Mitchell has not overcome this presumption. The record shows that Mitchell's counsel extensively cross-examined the expert on her conclusions, eliciting an admission from the witness that no studies supported her testimony, reiterating the absence of DNA evidence implicating Mitchell, and introducing into evidence the expert's report containing that finding. Mitchell therefore has failed to show ineffective assistance of trial counsel.

Judgment affirmed. All the Justices concur.

Decided April 16, 2018.

Murder. Lowndes Superior Court. Before Judge Cowart.

J. Converse Bright, for appellant.

Bradfield M. Shealy, District Attorney, Jessica W. Clark, Michelle T. Harrison, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Vanessa T. Meyerhoefer, Assistant Attorney General, for appellee.