## S04A0507. CARERO v. THE STATE.
(596 SE2d 619)

HINES, Justice.

Vincent Carero challenges his convictions for malice murder, armed robbery, and possession of a firearm during the commission of a crime in connection with the fatal shooting of convenience store owner, Michael Lane. His sole contention is that he was deprived of a fair trial because the trial court erroneously admitted, as a similar transaction, evidence of his involvement in a prior armed robbery of the owners of a laundromat located near the convenience store. We find the contention to be without merit.[1]

At approximately 10:00 p.m. on January 23, 2001, Lane and his employee, Isaiah Green, Jr., were closing Shady's Food Store and locking the exterior doors, when they were approached by two men. One of the men drew a handgun and shot Lane, fatally wounding him. The other grabbed a bag from Lane which contained the day's receipts and money. A resident of a neighboring house saw the two suspects from a distance and gave police a general description.

Corporal Walker of the Savannah Police Department arrived at the scene. Two men standing in the area told Walker that the suspects had run in a westerly direction. Walker and another officer, Corporal Smith, discovered fresh footprints between two houses just north of the store. They followed the footprints to a nearby residence rented by Effie Bostic and frequented by Carero.

The day before the shooting and armed robbery, the elderly owners of nearby Futch's Laundromat were robbed at gunpoint. A .38 caliber handgun was taken during the robbery as well as a quantity of candy and cigarettes. Lane was shot with a .38 caliber handgun.

Detective Gavin was contacted regarding the case by the employer of Carero's uncle, Sheldon Carero, who told him that the uncle had information about the shooting. Sheldon Carero implicated his nephew in the shooting at Shady's as well as the armed robbery

---

[1] The murder and related crimes occurred on January 23, 2001. On May 16, 2001, a Chatham County grand jury indicted Carero, along with Michael Robinson, for Count 1 – the malice murder of Lane; Count 2 – the felony murder of Lane while in the commission of armed robbery; Count 3 – the armed robbery of Lane; Count 4 – possession of a firearm during the commission of the murder of Lane; and Count 5 – possession of a firearm during the commission of the armed robbery of Lane. Carero was tried before a jury July 9-11, 2002, and was found guilty on all counts. On July 17, 2002, Carero was sentenced to life imprisonment on Count 1; five years in prison on Count 4 to be served consecutively to the sentence in Count 1; twenty years in prison on Count 3 to be served consecutively to the sentence in Count 4; and five years in prison on Count 5 to be served consecutively to the sentence in Count 3. Count 2 stood vacated by operation of law. A motion for new trial was filed on August 9, 2002, amended on April 1, 2003, and denied on August 11, 2003. A notice of appeal was filed on August 19, 2003, and the case was docketed in this Court on November 25, 2003. The appeal was submitted for decision on January 19, 2004.

at Futch's Laundromat. The uncle related that Carero had told him that he had shot someone, that he was with a friend, Michael Robinson, and that he told Robinson to grab the man's bag.

Carero and Robinson were arrested at the home of Carero's girlfriend, Quantina Bostic, and her mother, Effie Bostic. Quantina and her mother gave statements implicating Carero in the robbery of Shady's and Futch's Laundromat.

Carero gave a videotaped statement to police, a redacted version of which was played for the jury. Carero admitted committing the armed robbery and shooting of Lane along with Robinson, and related that the bag taken from Lane had been burned on Effie Bostic's back porch. He also said that the weapon used in the fatal shooting was the .38 caliber handgun taken from Futch's Laundromat. A burn mark was found on the back porch of the Bostic residence and the charred remains of a bag were located near the stairs. Items taken during the armed robbery at Futch's Laundromat were also found at the house.

Quantina Bostic testified that on January 22, 2001, she, Robinson, Carero, and Carero's twin brother, Victor, were walking to a store to get something to eat when one of them said that they needed money; Robinson suggested they go to Futch's Laundromat; one of the Carero brothers was carrying a .25 caliber handgun belonging to Robinson; as Quantina waited by the door, Carero and Robinson went behind the counter and took candy, cigarettes, and a .38 caliber handgun; later that night Carero and Robinson planned the robbery of Shady's; after the robbery, the two returned to the Bostic residence, where they counted and divided the money; Carero confessed that he shot Lane.

Effie Bostic testified that on the night of the Shady's robbery, Robinson and Carero ran into her house and screamed, "Turn off all the lights"; they told her that they had just "got somebody," which she interpreted to mean that they just shot or robbed someone; Bostic turned off all the lights, and after a few minutes, she heard police sirens near the rear of her house; Carero stated that he had shot Lane; Effie helped count the money taken from Lane; and she received $300 of the stolen funds.

Ms. Futch recognized Carero from a picture in the newspaper following the crimes at Shady's. According to her, Carero was the man who had been in charge of the robbery of her laundromat because he was the one asking questions and giving orders.

1. The State filed a pre-trial motion to introduce evidence of Carero's involvement in the armed robbery at Futch's Laundromat as a similar transaction on the theories that the Futch armed robbery showed a common scheme or pattern and course of conduct, and that it was a mutually dependent offense.

> Before evidence of prior crimes is admissible, the trial court must determine that the State has affirmatively shown that: (1) the State seeks to admit evidence of the independent offenses or acts for an appropriate purpose; (2) there is sufficient evidence that the accused committed the independent offenses or acts; and (3) there is sufficient connection or similarity between the independent offenses or acts and the crimes charged so that proof of the former tends to prove the latter. *Williams v. State,* 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991). See also Uniform Superior Court Rule 31.3 (B).

*Palmer v. State,* 271 Ga. 234, 239 (8) (a) (517 SE2d 502) (1999).

The trial court found that evidence of the independent act was offered for appropriate purposes, there was evidence identifying Carero as the perpetrator of the robbery of Futch's Laundromat on January 22, 2001, and evidence of the independent act was admissible both as an extrinsic transaction logically connected to the offenses being tried, and as a mutually dependent crime.

Carero contends that the trial court erred in finding that evidence of the armed robbery at Futch's Laundromat was admissible as a mutually dependent crime because the entire basis of that theory was the State's contention that the weapon stolen from Futch's Laundromat was the same weapon used to shoot Lane, but the State never established that it was the same weapon. The contention is unavailing.

First, the State offered significant evidence, including Carero's own statements, that the weapon stolen from Futch's Laundromat was the one used in the armed robbery and fatal shooting at Shady's. Moreover, the identity of the weapon was not the sole basis for finding a mutually dependent crime. The State produced evidence that Carero and Robinson determined to commit the armed robbery at Shady's upon their return from their armed robbery of Futch's Laundromat, and that the criminal episodes, which occurred within 24 hours of each other, were part and parcel of the neighborhood crime spree to get money. See *Eckman v. State,* 274 Ga. 63, 66 (2) (548 SE2d 310) (2001).

There is likewise no merit to Carero's further contention that the trial court erred in finding that evidence of the armed robbery at Futch's Laundromat was admissible as a similar transaction to show a common scheme or pattern and course of conduct. The State produced ample evidence identifying Carero as one of the perpetrators of the armed robbery at Futch's Laundromat; there was evidence that the weapon taken from the laundromat was the one used to shoot Lane; the armed robbery at Futch's Laundromat and the crimes at Shady's occurred within 200 yards of the Bostic residence, where

Carero frequently stayed and where he, in fact, was apprehended; items taken in both criminal episodes were found at the Bostic residence; there was physical violence directed at the victims in both armed robberies; and in both criminal episodes the perpetrators fled on foot. There was no error in the trial court's finding a logical connection between the armed robbery at Futch's Laundromat and the crimes at Shady's so that proof of the former tended to prove the latter.[2] *Palmer v. State*, supra at 239 (8) (a).

Finally, Carero complains that the alleged errors by the trial court were compounded by its failure to give adequate limiting instructions on the use of the evidence of the armed robbery at Futch's Laundromat. But the complaint is baseless. Carero fails to demonstrate that he objected below in any manner to the limiting instructions. What is more, the record shows that the trial court instructed the jury multiple times on the limitations of similar transaction evidence.[3]

2. The evidence at trial was sufficient to enable a rational trier of fact to find Carero guilty beyond a reasonable doubt of the crimes for which he was charged and convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

3. Carero's convictions for the malice murder and armed robbery of Michael Lane and possession of a firearm during the commission of Lane's murder are affirmed. However, the sentence for possession of a firearm during the commission of the armed robbery of Lane must be vacated. See *State v. Marlowe*, 277 Ga. 383 (589 SE2d 69) (2003).

*Judgments affirmed in part and vacated in part. All the Justices concur.*

DECIDED MAY 24, 2004.

*Zipperer, Lorberbaum & Beauvais, Steven L. Beauvais*, for appellant.

*Spencer Lawton, Jr., District Attorney, Larry Chisolm, Assistant*

---

[2] Citing *Foster v. State*, 209 Ga. App. 68 (432 SE2d 662) (1993) and *Carroll v. State*, 143 Ga. App. 796 (240 SE2d 197) (1977), Carero asserts that the trial court failed to conduct a balancing test to determine that the relevance of the earlier crime outweighed its prejudicial impact. But that the court did so is clearly implicit in its finding that the State satisfied the third requirement for admissibility.

[3] The trial court gave a complete charge on similar transaction evidence before the first such witness, Ms. Futch, testified. The court then reminded the jury of its instruction and directed its applicability to the testimony of Mr. Futch and Quantina Bostic. It again instructed the jury regarding similar transaction evidence in its final charge.

*District Attorney, Thurbert E. Baker, Attorney General, Frank M. Gaither, Jr., Assistant Attorney General*, for appellee.