## S05A0865. COPPRUE v. THE STATE.
### (621 SE2d 457)

Melton, Justice.

Appellant, Johnny Lee Copprue, appeals his convictions for malice murder, felony murder, two counts of aggravated assault, and two counts of possession of a firearm during the commission of a crime in connection with the shooting death of Christopher King. Finding no reversible error, we affirm.[1]

The evidence adduced at trial showed that, several weeks prior to his murder, the victim sold fake cocaine to appellant's brother, Archie Copprue. Archie decided to travel to Chicago to enlist appellant to assist in a plan to retaliate against the victim for selling the counterfeit drugs. On January 30, 2000, Archie and his mother bonded appellant out of a Cook County jail. The brothers spent the night in Gary, Indiana with appellant's girlfriend, Tiffany Sturgis, and the next morning drove to Atlanta. On February 2, 2000, appellant and Archie spoke with the victim's former roommate, Douglas Dietrich, as to the victim's whereabouts in Atlanta. Dietrich showed the brothers where the victim worked. Later that evening, Archie shot the victim numerous times in the torso, and appellant shot him once in the head in an ambush in a parking lot outside of the victim's place of employment. After the shooting, the brothers returned to Dietrich's apartment. There, Archie told his girlfriend, Crystal Holloway, that he had "taken care of Chris." Holloway testified that she accompanied the brothers when they returned to the scene of the shooting and watched them plant fake drugs on the victim's body. Appellant took a bus back to Indiana. In Indiana he told his girlfriend, Sturgis, about his participation in the Atlanta murder. Although

---

attorney fees will be vacated only where the lower court abused its discretion in making the award).

[1] The crime occurred on February 3, 2000. Copprue was indicted January 24, 2001 in Gwinnett County. He was found guilty on July 23, 2001 and was sentenced that same day to life in prison for malice murder plus two consecutive five-year terms for the aggravated assault and possession charges. His motion for new trial, filed July 27, 2001 and amended July 16, 2003, was denied November 16, 2004. A notice of appeal was filed December 8, 2004. The appeal was docketed in this Court on February 7, 2005 and submitted for decision on the briefs.

jointly indicted, appellant and Archie were tried separately pursuant to the grant of a motion to sever; Dietrich received immunity from the State for his trial testimony. Appellant denied any involvement in the crime, contending instead that he was in Indiana at the time of the shooting.

1. Viewed in the light most favorable to the jury's verdict, we conclude that the evidence was sufficient to enable a rational trier of fact to find appellant guilty of the crimes charged beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Appellant contends that the trial court erred in denying his motion in limine to exclude any reference to his Chicago incarceration because the evidence impermissibly placed his character into evidence. No evidence of a criminal defendant's general bad character or prior conviction is admissible unless the defendant first places his character in issue. See generally OCGA § 24-9-20 (b). However, there are instances where the State may properly offer evidence that the defendant has been incarcerated without imputing bad character within the meaning of the statute. See *Jones v. State*, 257 Ga. 753 (1) (c) (363 SE2d 529) (1988); *Kellibrew v. State*, 239 Ga. App. 783 (3) (521 SE2d 921) (1999) (mentioning of defendant's prior incarceration did not place his character into evidence); *Agony v. State*, 226 Ga. App. 330 (3) (486 SE2d 625) (1997) (evidence that defendant had previously been incarcerated under a different name). The State introduced a redacted copy of appellant's "jail booking history" and his January 30, 2000 release from the Cook County jail for the purpose of establishing a timeline to refute appellant's alibi defense that he was in Indiana on the day of the incident. The State also sought to show that appellant, who several witnesses referred to as "Q," was known by that alias. We conclude the evidence was relevant and admissible to confirm that Archie bonded appellant out of jail just days prior to the murder and that the witnesses were, in fact, referring to appellant when they spoke about "Q." Moreover, since the State redacted from the documents any reference to the reason for the incarceration, contrary to appellant's assertion, this is not a case where the State improperly introduced a previous conviction for the sole purpose of impugning the defendant's character. See *Johnson v. State*, 275 Ga. 508 (3) (570 SE2d 292) (2002).

3. Appellant next argues that the trial court erred when it refused to dismiss two jurors for cause after they articulated their bias against individuals who had previously used aliases or had been incarcerated. We find no error in the trial court's refusal to strike the two jurors for cause, as the voir dire testimony reflects that the jurors' opinions were not so fixed and definite that they would not be able to

set their opinions aside and decide the case based upon the evidence. See *Miller v. State*, 275 Ga. 730 (5) (571 SE2d 788) (2002).

4. Prior to trial, the trial court ruled that the videotaped statement that Deitrich's girlfriend, Dana Bryant, had given to the police during the murder investigation could be admitted under the necessity exception to the hearsay rule because Bryant could not be located for trial. Under our interpretation of *Crawford v. Washington*, 541 U. S. 36, 40 (124 SC 1354, 158 LE2d 177) (2004) (the Sixth Amendment Confrontation Clause prohibits the admission of structured police interrogations of an unavailable witness unless the defendant has had a prior opportunity to cross-examine the witness), Bryant's statement constituted impermissible testimonial evidence and should have been excluded. See *Jenkins v. State*, 278 Ga. 598 (2) (604 SE2d 789) (2004). However, the admission of the testimony was harmless as there is no reasonable probability that the evidence contributed to the verdict because it was cumulative of other properly admitted evidence about the offense. See *Gay v. State*, 279 Ga. 180 (2) (611 SE2d 31) (2005).

5. Appellant contends that Archie's statement to Holloway after the murder that he had "taken care" of the victim constituted inadmissible hearsay. Here, the State made a prima facie showing of the existence of an agreement between Archie and appellant to murder King. The record reflects that the incriminating statement at issue was made shortly after the crime occurred and prior to appellant's arrest and that the non-custodial statement was made to Archie's girlfriend. Under these circumstances, the statement can be characterized as the declaration of a co-conspirator rather than as a confession and was admissible against appellant. See OCGA § 24-3-5; *Brown v. State*, 262 Ga. 223 (2) (c) (416 SE2d 508) (1992). See also *Jones v. State*, 271 Ga. 433 (520 SE2d 690) (1999).

6. The trial court did not err in refusing to allow appellant to impeach State-witness Sturgis by testimony of specific acts of prior misconduct that did not result in the conviction of a crime involving moral turpitude. See *Al-Amin v. State*, 278 Ga. 74 (14) (597 SE2d 332) (2004).

*Judgment affirmed. All the Justices concur, except Hunstein, P. J., who concurs in Divisions 1, 3, 4, 5, and 6 and in the judgment.*

DECIDED OCTOBER 24, 2005.

*Michael M. Sheffield*, for appellant.

*Daniel J. Porter, District Attorney, Tracie J. Hobbs, Niria D. Baggett, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Jason C. Fisher, Assistant Attorney General,* for appellee.