S10A0208. STOVALL v. THE STATE.
(696 SE2d 633)

BENHAM, Justice.

Appellant Keshon Terrell Stovall, also known as Archie Copprue, was convicted of and sentenced for the malice murder of Christopher King, for possession of the firearm he used in King's murder, and for possession of the firearm his co-indictee used in King's murder.[1] We affirm the murder conviction and one of the convictions for firearm possession, and vacate the other conviction.[2]

---

[1] This Court affirmed the judgment of conviction entered in a separate trial against appellant's co-indictee and brother, John Copprue, in *Copprue v. State*, 279 Ga. 771 (621 SE2d 457) (2005).

[2] The victim was killed on February 3, 2000. Appellant, his brother, and a third man were charged in a true bill of indictment returned by a Gwinnett County grand jury on January 24,

1. The State presented evidence that the body of the victim was found on February 4, 2000, lying in a remote area of the parking area of the victim's place of employment. His employer testified the victim had worked until 9:00 p.m. on February 3. The victim had suffered multiple gunshot wounds to the chest and head, and a clear plastic bag containing white powder was found near his right hand. Several .22-caliber shell casings were found in the area of the body, as was a 9mm-caliber shell casing. The medical examiner who performed an autopsy on the body testified the victim had suffered five gunshot wounds, three of which were fatal: the "larger bullet" that had been fired into the back of the victim's head, a shot in the groin area that lacerated the victim's liver, and a shot that penetrated the victim's right chest, causing internal hemorrhaging. The two non-fatal gunshot wounds were to the victim's right shoulder and right chest.

Appellant's fiancée, currently serving a prison sentence for possession of cocaine with intent to distribute, testified appellant was also known as "Bird." She said appellant was angry with the victim in January 2000 because appellant had purchased what turned out to be imitation cocaine through the victim and appellant wanted the victim to reimburse him $4,800. In late January, appellant rented a car and drove to Chicago where he posted bond for his brother, and the duo returned to Atlanta. On a night in early February, appellant and his brother went to an apartment where the victim formerly had spent several nights, and the occupant, a friend of the victim who was indicted with appellant and his brother, testified appellant and his brother were dressed in black. The co-indictee also testified that appellant showed him the gun he was carrying inside his waistband, told him the victim owed appellant $4,800, and stated that "someone has to pay." The occupant, who worked with the victim, took the visitors to the parking lot of the business where the victim worked. The following evening, appellant returned to the co-indictee's apartment and told him the victim "was taken care of." Appellant's girlfriend testified she met appellant, his

2001, with malice murder, felony murder (aggravated assault), aggravated assault of the victim with a 9mm-caliber handgun, aggravated assault of the victim with a .22-caliber handgun, possession of a 9mm-caliber handgun during the commission of a felony, and possession of a .22-caliber handgun during the commission of a felony. Stovall and his brother were tried separately, with Stovall's trial commencing July 9, 2001, and concluding on July 13 when the jury returned its verdicts of guilty on all counts. On July 18, 2001, appellant was sentenced to life imprisonment for malice murder and to a consecutive five-year sentence for each of the convictions for firearm possession. New counsel was appointed to represent appellant on August 9, 2001, and a motion for new trial was filed the following day. The motion for new trial was amended on June 21, 2005, May 29, 2007, February 27, 2008, and March 20, 2009. The motion was heard by the trial court on May 28, 2009, and denied on May 29, 2009. A notice of appeal was filed June 3, 2009, and the appeal was docketed in this Court on October 9, 2009. It was submitted for decision on the briefs.

brother, and the co-indictee on the night of February 3 and appellant told her they had killed the victim and placed a bag of imitation cocaine beside him. Appellant's brother told her appellant had been scared when appellant shot the victim and appellant's brother had shot the victim in the head. The girlfriend saw appellant and his brother clean two handguns — a 9mm-caliber and a .22-caliber — and put them in a black duffle bag that appellant's brother took with him to Indiana. Appellant's brother's girlfriend, a prisoner in an Illinois penal institution, testified that appellant had bonded his brother out of jail in late January 2000 and had taken him to Atlanta. When the brother returned in early February from Atlanta, he brought a black duffle bag and told her appellant had shot the victim and appellant's brother had had "to finish it" by shooting the victim in the head. Representatives of the Cook County, Illinois jail, a locksmith, and a car-rental agency provided testimony corroborative of details given by the two jailed women and the co-indictee.

The evidence was sufficient to authorize a rational trier of fact to find appellant guilty beyond a reasonable doubt of malice murder and possession of a firearm during the commission of a felony. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Citing *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986), appellant challenged in the trial court the State's exercise of peremptory challenges against the two African-American members of the venire remaining after the third African-American member of the venire was struck for cause. The assistant district attorney stated she had struck one of the black venire members because the district attorney's office had prosecuted the woman's son within the last two years, and had struck the other black venire member because he had said that issues with his employment would probably distract him from the trial and that racism "was definitely an issue" in the criminal prosecution of one of his relatives, and the prosecutor was concerned he would not pay attention to the case. Defense counsel pointed out to the trial court that both challenged venire members had stated they could be fair and impartial. On appeal, appellant maintains the trial court erred in ruling that the reasons presented by the State for the exercise of its challenges were race-neutral.

The prior conviction of a family member of a prospective juror is a sufficiently race-neutral reason to support the exercise of a peremptory challenge, as is the venire member's concerns about the hardship of jury service on his employment. *Flanders v. State*, 279 Ga. 35 (2) (609 SE2d 346) (2005). The rationales offered by the prosecutor were racially neutral since none of them is based on a characteristic or stereotype peculiar to any race. *Turner v. State*, 267 Ga. 149, 152 (476 SE2d 252) (1996). The trial court did not err in

denying appellant's *Batson* motion since appellant failed to carry his burden of proving purposeful discrimination in the prosecution's exercise of its peremptory challenges. *Flanders v. State*, supra, 279 Ga. at 38.

3. As part of its case-in-chief and over the objection of appellant, the State played for the jury a redacted version of a videotaped interview police conducted with a woman who was present with the co-indictee in the apartment visited by appellant and his brother. The woman did not testify at appellant's trial. The 11½-minute videotape was admitted under the necessity exception to the rule barring the admission of hearsay testimony. See OCGA § 24-3-1 (b). The woman told investigators that "Bird" and a man she had never seen before were dressed in black from head to toe when they came to the apartment the night before the victim was killed; they were looking for the victim because he owed appellant $4,800; and appellant said he was going to kill him.

The confrontation clause imposes an absolute bar to the admission in evidence of an out-of-court statement when it is testimonial in nature and when the defendant does not have an opportunity to cross-examine the declarant. *Gay v. State*, 279 Ga. 180 (2) (611 SE2d 31) (2005). See *Crawford v. Washington*, 541 U. S. 36, 53-54 (124 SC 1354, 158 LE2d 177) (2004). Statements made to police officers during an investigation are "testimonial." *Watson v. State*, 278 Ga. 763 (2) (b) (604 SE2d 804) (2004). Although appellant's trial took place prior to the date *Crawford* was decided, the *Crawford* decision is applicable to all cases pending on direct review or not yet final. *Soto v. State*, 285 Ga. 367 (2) (a) (677 SE2d 95) (2009). It was error to admit the woman's statement to police. Id. See also *Copprue v. State*, 279 Ga. 771 (4) (621 SE2d 457) (2005) (where this Court held that the identical videotaped interview should have been excluded because it constituted impermissible testimonial evidence). However,

> the inquiry does not . . . end with the conclusion that permitting the hearsay testimony was error because even error of constitutional magnitude such as . . . violations of the right of confrontation can be held harmless. "Whether a constitutional violation constitutes harmless error depends upon whether the State can prove beyond a reasonable doubt that the error did not contribute to the verdict." [Cit.] This Court has found violations of the standard stated in *Crawford* to be harmless because the evidence against the defendant was overwhelming [cit.] or because the hearsay was cumulative of other evidence. [Cit.]

*Willingham v. State*, 279 Ga. 886, 887-888 (622 SE2d 343) (2005).

The hearsay statement was cumulative of testimony given by the co-indictee and appellant's incarcerated girlfriend. Citing *Brawner v. State*, 278 Ga. 316, 319 (602 SE2d 612) (2004), appellant points out that the hearsay declarant was the only one of the three witnesses who was not impeached: the co-indictee was impeached as being a co-indictee to the murder charges who received testimonial immunity, and appellant's girlfriend was impeached as having been convicted of multiple drug offenses, most recently facing a possible sentence of 91 years and receiving a concurrent sentence, and as not having reported to police what she knew of the murder until she herself was arrested on drug charges seven months after the victim was killed. *Brawner* is not controlling because a point critical to our decision in *Brawner* is not present here. In *Brawner*, the witnesses whose testimony was corroborated by the hearsay statement were impeached by proof of their contradictory statements, and the jury was instructed that the testimony of a witness the jury found to have been successfully impeached by proof of contradictory statements could be disregarded unless it was corroborated by other witnesses. Id. at 319-320. In the case at bar, the witnesses whose testimony was corroborated by the hearsay were not impeached by proof of contradictory statements, but by proof of the receipt of testimonial immunity and the receipt of no additional term of incarceration for convictions. The jurors were not instructed that such forms of impeachment authorized the jury to disregard the witnesses' testimony unless it was corroborated; rather, they were told it was for them "to determine whether or not a witness had been impeached and to determine the credibility of such witness and the weight the witness's testimony shall receive in the consideration of the case." We conclude the State carried its burden of proving beyond a reasonable doubt that the erroneous admission of the videotaped interview did not contribute to the verdict because it was cumulative of properly-admitted testimony.

4. Appellant contends the trial court committed reversible error when it limited the parties to closing arguments of one hour instead of the two-hour period mandated by OCGA § 17-8-73. The statute provides that "[i]n cases involving capital felonies, counsel shall be limited to two hours for each side." Malice murder and felony murder are considered capital felonies for purposes of this statute, and the trial court has no discretion to impose any further limit on the time for closing argument in such prosecutions. *Chapman v. State*, 273 Ga. 865 (3) (548 SE2d 278) (2001). The high regard in which the right to make a closing argument is held is apparent from judicial determinations that harm is presumed when the right is erroneously denied and that the presumption of harm is not readily

overcome. *Hayes v. State*, 268 Ga. 809, 813 (7) (493 SE2d 169) (1997). "The presumption of harm may fall when the denial of the right is not complete and only in those extreme cases in which the evidence of a defendant's guilt is so overwhelming that it renders any other version of events virtually without belief." Id.

As the State's case-in-chief was nearing its conclusion, the court and attorneys discussed when the case might be submitted to the jury and the trial court expressed its hope to have closing arguments take place that afternoon. Defense counsel stated, "I don't have long arguments. My argument is only going to be about 30 minutes." Later, during the charge conference, the trial court informed the attorneys that closing argument would be limited to an hour for each side with the court giving a two-minute warning to an attorney as the one-hour deadline approached. The trial court interrupted the closing argument of the assistant district attorney to inform her she had five minutes remaining. Thereafter, defense counsel gave a closing argument that lasted 23 minutes.

It is clear the trial court erred when it informed the attorneys in this capital case that they were limited to giving a closing argument of one hour's duration. OCGA § 17-8-73. However, insofar as appellant is concerned, the trial court's misstatement of the law was nothing more than a misstatement. Inasmuch as the record shows that defense counsel informed the court of counsel's plan to deliver a 30-minute closing argument prior to the trial court's announcement of the one-hour limitation, and that counsel was not interrupted during the delivery of his closing argument by the trial court, we cannot say that appellant's right to make a two-hour closing was abridged by the trial court's misstatement. See *Thompson v. State*, 286 Ga. 891 (692 SE2d 384) (2010). In light of the timing and the content of defense counsel's announced plans, appellant's assertion on appeal that trial counsel was "chilled" by the trial court's announcement and the trial court's interruption of the prosecuting attorney's closing argument is without merit.

5. Appellant was charged with, convicted of, and sentenced for two counts of possession of a firearm during the commission of a felony (OCGA § 16-11-106 (b) (1)), with one weapon being the .22-caliber handgun appellant used to shoot the victim and the other weapon being the 9mm-caliber handgun used by his brother to shoot the victim. Citing *Marlowe v. State*, 277 Ga. 383 (2) (c) (589 SE2d 69) (2003), appellant contends he cannot be sentenced for both gun possession counts. Citing *Hill v. State*, 276 Ga. 220 (3) (576 SE2d 886) (2003), the district attorney asserts that in addition to being convicted and sentenced for possessing the gun he used, appellant

can be convicted and sentenced as a party to the crime for possessing the gun used by his brother.

In pertinent part, OCGA § 16-11-106 (b) provides:

> Any person who shall have on or within arm's reach of his or her person a firearm . . . during the commission of . . . [a]ny crime against or involving the person of another . . . and which crime is a felony, commits a felony and, upon conviction thereof, shall be punished by confinement for a period of five years, such sentence to run consecutively to any other sentence which the person has received.

In *Marlowe*, supra, 277 Ga. at 386, this Court construed the legislature's reference in the statute to "*any* crime against *a* person" as indicating a legislative intent "to impose separate criminal liability upon a defendant for each person against whom a crime is committed." The Court concluded that "where multiple crimes are committed together during the course of one continuous crime spree, a defendant may be convicted once for possession of a firearm during the commission of a crime as to every individual victim of the crime spree, as provided under OCGA § 16-11-106 (b) (1). . . ." Id. See also *Abdullah v. State*, 284 Ga. 399 (4) (667 SE2d 584) (2008). In the case at bar, appellant was engaged in one continuous crime spree consisting of murder, possession of a firearm during the commission of a crime, and, as a party to the crime, possession of a firearm during the commission of a crime. Because only one victim was involved in appellant's crime spree, under *Marlowe* he may be convicted only once for possession of a firearm during the commission of a crime. Accordingly, the conviction and sentence imposed on one of the two possession charges must be vacated. Id. See also *McIlwain v. State*, 287 Ga. 115 (694 SE2d 657) (2010) (where defendant and co-defendant each had a firearm and there were two victims, defendant could be convicted of two counts of possession of a firearm during the commission of a felony); *Gutierrez v. State*, 285 Ga. 878 (3) (684 SE2d 652) (2009) (since there were three victims, defendant could be convicted of three counts of possession of a firearm during the commission of a felony under OCGA § 16-11-106 (b) (2)); *Abdullah v. State*, supra, 284 Ga. 399 (4); *Taylor v. State*, 282 Ga. 693 (3) (653 SE2d 477) (2007); *Carero v. State*, 277 Ga. 867 (3) (596 SE2d 619) (2004) (in *Adullah*, *Taylor*, and *Carero*, this Court vacated one of two firearm possession convictions because there was only one victim).

*Judgment affirmed in part and vacated in part. All the Justices concur, except Carley, P. J., and Hines and Nahmias, JJ., who concur specially.*

NAHMIAS, Justice, concurring specially.

I join in full Divisions 1 through 4 of the majority opinion, but I concur in the result of Division 5 for reasons different than those set forth by the majority. The question is whether a defendant who uses one firearm to shoot a victim and is a party to the use of a second firearm to shoot the same victim is guilty of one or two violations of OCGA § 16-11-106 (b). The majority opinion finds the issue controlled by *State v. Marlowe*, 277 Ga. 383 (589 SE2d 69) (2003), which held that

> where multiple crimes are committed together during the course of one continuous crime spree, a defendant may be convicted once for possession of a firearm during the commission of a crime as to every individual victim of the crime spree, as provided under OCGA § 16-11-106 (b) (1) [crimes against the person], and additionally once for firearm possession for every crime enumerated in subsections (b) (2) through (5) [unlawful entry, theft, controlled substances, and drug trafficking crimes].

*Marlowe*, 277 Ga. at 386.

I have doubts about the reasoning of the *Marlowe* majority, as did the three dissenting Justices in that case, who would have held that a separate conviction is authorized under OCGA § 16-11-106 (b) for each predicate felony the defendant commits while possessing a firearm, even though there was only one victim. See 277 Ga. at 387-389 (Carley, J., joined by Thompson, J., concurring in part and dissenting in part); id. at 389-391 (Hines, J., dissenting).

This is not the case, however, to consider whether *Marlowe* was correctly decided or whether it should nevertheless be followed as a matter of stare decisis. Whether the *Marlowe* majority or the *Marlowe* dissenters were right, it is clear to me that the number of firearms involved is not the appropriate unit of prosecution for violations of OCGA § 16-11-106 (b). In addressing the same issue under the similar federal statute, 18 USC § 924 (c) (1), at least nine federal circuits have held that "a defendant could not be convicted of multiple § 924 (c) counts for using multiple guns in a single [predicate] offense," with only the Eighth Circuit, to some extent, going the other way. *United States v. Cappas*, 29 F3d 1187, 1189 (7th Cir. 1994) (citing cases). As the Sixth Circuit explained in rejecting the Eighth Circuit's view, although the text of § 924 (c) (1), like the text of OCGA § 16-11-106 (b), refers to the singular "a firearm," the firearm is not the focus or subject of the statute. See *United States v. Taylor*, 13 F3d 986, 993-994 (6th Cir. 1994). I agree, even if there remains debate about what else is the correct focus of the statute

(the number of victims, the number of "crime spree[s]," the number of predicate offenses, or some other point). It may make sense to punish a defendant who brings two guns to a potentially dangerous crime more harshly than a defendant who possesses only one gun, but that policy is not unambiguously reflected in the text of OCGA § 16-11-106 (b) and interpreting a criminal statute in that way would conflict with the rule of lenity.

In this case, after merger of the predicate felonies committed by Stovall, there remains only one predicate felony conviction (malice murder). Accordingly, even under the *Marlowe* dissenters' view, I believe there could be only one conviction under OCGA § 16-11-106 (b), regardless of the number of firearms involved. For these reasons, I respectfully concur in the result of Division 5.

I am authorized to state that Presiding Justice Carley and Justice Hines join in this special concurrence.

DECIDED JUNE 28, 2010.

*Sharon L. Hopkins*, for appellant.
*Daniel J. Porter, District Attorney, Tracie H. Cason, Assistant District Attorney, Thurbert E. Baker, Attorney General, Jason C. Fisher, Assistant Attorney General*, for appellee.