295 Ga. 92
FINAL COPY

S14A0230. GIBBS v. THE STATE.

HINES, Presiding Justice.

Following the denial of his motion for new trial, as amended, Carl Gibbs appeals his convictions for malice murder, armed robbery, and two counts of possession of a firearm during the commission of a crime in connection with the fatal beating and shooting of Judson Pilcher Boyd. His sole challenge is that the evidence was insufficient to convict him of the crimes. The evidentiary challenge is without merit; however, it was error to sentence Gibbs on both of the firearm possession counts. Accordingly, we affirm in part, and vacate in part.[1]

---

[1] The crimes occurred on January 9, 2009. On March 10, 2009, a Richmond County grand jury returned a six-count indictment against Gibbs: Count 1 – malice murder; Count 2 – felony murder while in the commission of aggravated assault; Count 3 – possession of a firearm during the commission of murder; Count 4 – armed robbery; Count 5 – possession of a firearm during the commission of armed robbery; and Count 6 – possession of a firearm by a convicted felon. He was tried before a jury May 24-26, 2010, on Counts 1 through 5, and found guilty on all counts. Count 6 was nol prossed. On June 4, 2010, Gibbs was sentenced to life in prison on Count 1; a consecutive term of life in prison on Count 4; five years in prison each on Counts 3 and 5, to be served consecutively to each other and to Counts 1 and 4. The verdict on Count 2 stood vacated by operation of law. A motion for new trial was filed on June 4, 2010, and an amended motion for new trial was filed on November 20, 2012. The motion for new trial, as amended, was denied on January 30, 2013. A notice of appeal to the Court of Appeals was filed on February 5, 2013, the Court of Appeals transferred the appeal to this Court, and it was docketed to this Court's January 2014 term. The appeal was submitted for decision on the briefs.

The evidence construed to support the verdicts showed the following. Between 9:00 and 9:40 p.m. on January 9, 2009, several residents of Fairmont Street in Augusta heard their neighbor, Gibbs's mother Margaret Gibbs ("Margaret"), screaming for help. Margaret lived with her longtime boyfriend, 68-year-old Judson Pilcher Boyd. Around 8:30 p.m., before hearing Margaret's screams for help, a neighbor saw a car, either a Crown Victoria or a Grand Marquis, parked near Boyd's home. Responding to Margaret's cries for help, the neighbors entered the home and found Boyd's body; a bullet hole in Boyd's head was visible. Boyd died as the result of blunt force injury and a close-range gunshot to the head.

Police arrived on the scene to find Boyd's body lying behind a recliner; one of his pockets was pulled out, as if someone had reached into the pocket and taken its contents. Boyd routinely carried large amounts of cash, but only family members were aware of this fact. The recliner was covered in blood, and there was blood spatter on "just about every surface" in the L-shaped living room area. Otherwise the home was neat and there was no sign that it had been ransacked, nor were there any signs of forced entry. A nine millimeter shell casing was found under the dining room table and an open and empty box for

2

a nine millimeter pistol was discovered on top of a bed in a rear bedroom near a night stand with its drawer open.

As part of the investigation of the crime scene, Margaret's car was searched and in it were found two large sandwich bags filled with a form of the prescription drug Percocet and shoe boxes containing approximately $66,000 in cash. When Gibbs was arrested, he had a sandwich bag in his jacket pocket, consistent with the bags of pills found at Boyd's residence and filled with various prescription pills, including Percocet. Also in the jacket was $1,715 in cash with one bill bearing a bloodstain. When taken into custody, Gibbs's hands were bruised and one hand had a slight cut.

Around 4:00 or 5:00 p.m. on the day Boyd was killed, Gibbs and his girlfriend, Sherry Bailey, drove Bailey's Grand Marquis to a bar located about a mile from Boyd's home. Gibbs had not worked in a few weeks, and he then did not have much money. About 6:00 or 7:00 p.m., Gibbs left the bar in the Grand Marquis and did not return until 8:30 or 9:00 p.m. Gibbs told Bailey that he was going to South Carolina, although he later admitted this was untrue.

At the time of the crimes, Gibbs was living with Bailey. Bailey consented to a search of her residence, and the police found a pair of bloodstained jeans

3

belonging to Gibbs. Bloodstains were also found on various parts of the Grand Marquis. A DNA analysis confirmed that Boyd's blood matched the bloodstains on the jeans and those in the car's driver's seat. Processing of Gibbs's blood-stained jeans revealed that it bore "impact stains," which result from blood "flying through the air" and landing on the jeans. An expert in bloodstain pattern analysis examined photographs of both the crime scene and Gibbs's jeans. At trial, the expert testified that the fatal incident began by Boyd being beaten behind the recliner, with the attack progressing to the recliner, causing it to fall backwards to the floor; Boyd was then still alive and was on the floor behind the recliner where he sustained more blows and then the fatal gunshot wound. The expert further testified that the bloodstains on Gibbs's jeans were primarily of medium and high velocity; that medium velocity stains could be caused only by significant blunt force trauma; that both medium and high velocity impact stains could not be created without the application of a significant amount of force; and that shaking blood off one's hands would produce only low velocity impact stains.

Gibbs testified at trial that the cash found on him at the time of his arrest was money he had earned from construction work and had hidden from Bailey

in the trunk of his car so that Bailey would not spend it; that the bruising or scratches found on his hands were the result of roofing work he had done a couple of weeks prior to the crimes; he left the bar in the early part of the evening of the fatal shooting to go to Boyd's residence to "check on" Boyd and then to "get [himself] a couple of Percocets and go back to the bar"; when he went inside the residence, he found Boyd lying in the living room; he "got on [his] hands and knees" to see if he could help Boyd; he checked Boyd's wrist for a pulse, and put his ear to Boyd's chest and his hand under Boyd's nose to try and detect a heartbeat or breathing; after determining Boyd was dead, he fled the scene and did not call police because he had an outstanding "probation warrant," and there was blood on his clothes, and money and drugs at the scene, so he was scared he would be blamed for the death and go to jail; he took the Percocet pills with him because he did not want Boyd to be known as a drug dealer; and the blood on his jeans was the result of his kneeling on the floor by Boyd, and his shaking the blood from his hands and wiping them on the jeans.

1. Gibbs contends that the weight of the evidence was not sufficient to convict him of either malice murder or felony murder because the State failed to prove that he was Boyd's killer in that: there was evidence of previous break-

ins at Boyd's residence, and thus, the jury could have concluded that an unknown party committed the crimes; according to one investigator's testimony, the bloodstains on his jeans could have resulted from someone shaking blood off their hands; because the bloodstain pattern expert examined only photographs of the jeans, the expert's conclusion that the stains could not have occurred from shaking blood off one's hands is not reliable; the bloodstains could have been affected if the jeans were "balled-up" before the blood dried, and there was no awareness by the expert that the jeans had been "balled-up" or whether the blood dried before that happened; Gibbs was cooperative with law enforcement and had an explanation for why he had not called police; and although there was a gun missing from the crime scene, it was not found in Gibbs's home or car and the State did not produce a murder weapon. But, Gibbs's arguments are unavailing.

First, this Court does not weigh the evidence on appeal or resolve conflicts in trial testimony, rather the job of this Court is, viewing the evidence in the light most favorable to the verdicts, to determine whether a rational trier of fact could have found the defendant/appellant guilty beyond a reasonable doubt. *Browder v. State*, 294 Ga. 188, 191 (1) (751 SE2d 354) (2013). Furthermore, as to the possibility of a break-in at Boyd's residence resulting in the homicide, the prior

6

break-ins had occurred years before, and this time there was no evidence of forced entry into the home or any disarray inside. And, as to complaints about the testimony of the bloodstain pattern expert, the testimony was plainly and consistently that the stains could not have resulted from the scenario offered by Gibbs, and the expert went so far as to say that even if the jeans had been "balled-up" prior to being photographed, this would not have had an appreciable effect on the stain patterns. In any event, the jury was authorized to weigh the expert and other evidence, and was not required to believe Gibbs's version of events. *Whitaker v. State*, 291 Ga. 139, 141 (1) (728 SE2d 209) (2012).

Gibbs further maintains that the weight of the evidence was not sufficient to convict him of armed robbery because the State failed to prove that he took any property from the victim by use of an offensive weapon; although Gibbs was arrested with cash and Percocet in his possession, he explained that he took the pills when he discovered the victim's body, so that the victim would not be known as a drug dealer; and the State presented evidence only that the victim was dead when the pills were taken. However, here again, the jury was authorized to reject Gibbs's story, and accept the State's evidence. Id. Moreover, Gibbs admits taking the pills and cash, and the State presented evidence

suggesting that they were taken from Boyd just prior to, or in any event, near the time of Gibbs fatally beating and shooting Boyd, which is sufficient for his conviction for armed robbery. *Blevins v. State*, 291 Ga. 814, 817 (733 SE2d 744) (2012).

Consequently, there is no merit to Gibbs's further claim that the State failed to prove a charge of possession of a firearm during the commission of either murder or armed robbery due to the State's failure to prove such underlying crimes. Simply, the evidence was sufficient for a rational trier of fact to find Gibbs guilty beyond a reasonable doubt of the crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Gibbs's convictions for malice murder, armed robbery, and possession of a firearm during the commission of murder are affirmed. However, the trial court erred when it sentenced Gibbs for possession of a firearm during the commission of the armed robbery of Boyd in addition to sentencing him for possession of a firearm during the commission of Boyd's murder. The underlying crimes were both against the person of Boyd, and the evidence is that Gibbs possessed the same handgun to accomplish the commission of each felony,

8

and that each was part of one and the same fatal encounter. *State v. Marlowe*, 277 Ga. 383 (589 SE2d 69) (2003). Accordingly, Gibbs's sentence for possession of a firearm during the commission of armed robbery must be vacated. See *Carero v. State*, 277 Ga. 867, 869 (3) (596 SE2d 619) (2004).

Judgments affirmed in part and vacated in part. All the Justices concur.

Decided April 22, 2014.

Murder. Richmond Superior Court. Before Judge Brown.

Sara E. Meyers, for appellant.

Ashley Wright, District Attorney, Madonna M. Little, Assistant District Attorney, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Ryan A. Kolb, Assistant Attorney General, for appellee.