307 Ga. 44
FINAL COPY

S19A1394. JOHNSON v. THE STATE.

PETERSON, Justice.

James Melvin Johnson, Jr., appeals his convictions for malice

murder and armed robbery stemming from the shooting death of

Tony Rogers.[1] Johnson argues that the evidence was insufficient to

---

[1] Rogers was killed on August 16, 1995. On March 9, 1996, a Catoosa County grand jury indicted Johnson for malice murder and armed robbery. At a January 1997 trial, the jury found Johnson guilty on both counts. The trial court sentenced Johnson to life imprisonment for malice murder and a consecutive life sentence for armed robbery. Johnson filed a timely motion for new trial on February 14, 1997. New counsel was appointed for Johnson because of a desire to raise an ineffectiveness claim against trial counsel, and appellate counsel filed an entry of appearance on April 3, 1998. Four years later, on August 15, 2002, the trial court dismissed Johnson's motion for new trial because the motion was not being pursued and no transcript had been obtained. A week later, the trial court vacated its dismissal order, and current appellate counsel was substituted as Johnson's counsel on August 28, 2002. In June 2008, Johnson wrote a letter to the trial court clerk, asking for an update on his motion for new trial as he had not heard from appellate counsel since September 2002, when appellate counsel told Johnson that she would most likely amend the motion for new trial. On June 23, 2008, the clerk of court informed Johnson that appellate counsel had not amended the motion and the last action reflected in the record was the substitution of counsel, which occurred almost six years earlier. On August 15, 2012, the trial court set a hearing to consider Johnson's motion for new trial, and appellate counsel amended the motion on August 20, 2012, to raise one additional ground (ineffective assistance of trial counsel). Following a hearing, the trial court denied Johnson's motion, as amended, on August 27, 2012. Johnson filed a timely notice of appeal on September 26, 2012, asking that the appeal be sent

support his murder conviction because, although he was seen with Rogers prior to his death, there was no physical evidence that he killed Rogers. He also argues that the evidence was insufficient to sustain his armed robbery conviction because the evidence fails to show that he took Rogers's property by force. We affirm because the evidence was sufficient to support Johnson's convictions.

<hr>

to the Court of Appeals. Almost six years later, on September 24, 2018, Johnson's appeal was docketed in the Court of Appeals, which transferred the appeal to this Court on October 9, 2018. We attempted to secure two trial exhibits (two VHS tapes) that were omitted from the record, and when that proved unsuccessful, we remanded the case in April 2019 for the trial court to complete the record. On remand, the trial court held several hearings to locate the original exhibits, concluded that the original exhibits were missing, and, with the consent of the parties, reconstructed the record pursuant to OCGA § 5-6-41 (f) and (g).

On remand, the trial court also made several findings regarding the inordinate delay in the handling of Johnson's appeal. The trial court found the delay was caused by the actions and inactions of post-conviction counsel (Yancey and Hildebrand) in failing to secure trial transcripts, amend the motion for new trial, and request a hearing on the same, and in asking to hold the appeal to request a transcript without ever requesting the transcript. The record supports the trial court's finding that post-conviction counsel were responsible for most of the delay. Post-conviction counsel did nothing in almost 14 years to have Johnson's motion for new trial resolved and failed to take sufficient action to pursue his appeal in the next six years. We also emphasize ☐ again ☐ that "it is the duty of *all* those involved in the criminal justice system, including trial courts and prosecutors as well as defense counsel and defendants, to ensure that the appropriate post-conviction motions are filed, litigated, and decided without unnecessary delay." *Owens v. State*, 303 Ga. 254, 258 (4) (811 SE2d 420) (2018) (citation and punctuation omitted; emphasis added). Upon completion of the record, Johnson's appeal was redocketed to this Court's August 2019 term and submitted for a decision on the briefs.

2

1. Viewed in the light most favorable to the verdicts, the trial evidence shows that around 7:30 p.m. on August 16, 1995, Johnson was at a place known as the "Hole" located off U. S. Highway 41 in Rocky Face. Johnson, who lived about a half-mile from the Hole, was driving his white Ford truck.

That same evening, Rogers went to dinner with his wife and a mutual friend, and the trio made plans to go to a bar to hear live music. Rogers wanted to visit another friend before going to the bar and told his wife that he would meet her at the bar later that night. Rogers left his wife around 8:00 p.m., driving his black Pontiac Sunbird. Before he left, Rogers checked to make sure he had money in his wallet; he had three dollars in it.

Rogers was next seen at the Hole around 8:30 p.m., when he talked briefly to an acquaintance of his, Mike Rains. A half hour later, Rains saw Rogers talking to another man sitting in a white Ford truck. Rains saw Rogers leave the Hole around 9:15 p.m.; Rogers was driving his car and following the white Ford truck.

Around that time, Johnson arrived at Paul and Penny Ledford's house in his truck that was being followed by a dark car. Johnson asked to leave his truck there, but did not explain why. Johnson was acting nervous and hurried. Paul Ledford allowed Johnson to leave his truck, and Johnson left in the dark car that Paul Ledford later reported may have been driven by Rogers. The dark car headed north on U. S. Highway 41 toward Ringgold.

Around 9:50 p.m., two individuals called 911 after finding a body along the side of the road in a heavily wooded area known as Taylor Ridge, located just south of Ringgold in Catoosa County. The individuals led police to the body; the body was warm to the touch, but was unresponsive, and had blood around the head and arms. Officers did not find a wallet on or near the body but did recover some loose change in the victim's pocket. Police also observed suspected brain matter and a penny in the middle of the road, about six feet from where the body lay.

Johnson arrived at his uncle's residence near Taylor Ridge several hours later. Johnson was scratched up and his shoes were

4

muddy, and he told his uncle that he broke his ankle. Johnson asked to use his uncle's phone and called Thomas Flores around 4:00 a.m., asking that Flores give him a ride to retrieve his truck. Flores, Flores' mother, and another individual picked up Johnson at a gas station off U. S. Highway 41 near Ringgold and took Johnson to his truck. Johnson had a big tear in his pants and had trouble walking and claimed that someone "jumped" him. After being dropped off, Johnson gave Flores three dollars for gas money.

Detectives later identified the body as Rogers. An autopsy revealed two gunshot wounds to the head. The first shot was not fatal but likely caused Rogers to lose consciousness, while the second shot was a fatal shot to the back of the head. Based on Rogers's wounds, the shooter was standing in front of Rogers for the first gunshot and fired an execution-style shot from behind for the second.

Detectives also located Rogers's vehicle about one-and-a-half miles from where his body was found. A crime scene technician recovered a number of latent fingerprints from Rogers's vehicle. A

fingerprint examiner later compared known prints of Johnson to some of the recovered prints and concluded that three of the recovered prints were a match for Johnson.

Based on information that the victim was last seen talking to a man in an older white truck and that Johnson drove such a truck, police asked to interview Johnson. Johnson voluntarily went to the police station for an interview; the interview was video recorded and played for the jury.[2] Johnson admitted to the lead investigator that he was at the Hole on the evening of August 16, 1995, claiming that he was there only briefly around 5:00 or 6:00 p.m. to smoke a cigarette. Johnson also said he drove around for five to six hours after that. Johnson claimed that in the early hours of August 17, three men jumped him, put him into a car, hit his feet with a baseball bat, and abducted him. Johnson said he called Flores around 3:00 a.m., when the three men kicked him out of the vehicle,

---

[2] The original video recording was lost at some point in the years between trial and this appeal, but the trial court recreated the record under OCGA § 5-6-41 (f) and (g) by admitting a copy of the recorded interview and a written summary of that interview.

and Flores took him to retrieve his truck. Johnson denied knowing Rogers or that anyone followed him when he left the Hole.

At a later interview, which was also video recorded and played for the jury,[3] Johnson was read his *Miranda* rights and waived them. Johnson admitted that Rogers approached his vehicle sometime between 8:00 p.m. and 9:00 p.m. in Rocky Face. Johnson reported that he offered to sell Rogers some marijuana, and then he left in his truck with Rogers following. After dropping off his truck at the Ledfords, Johnson got into Rogers's car, and they drove to the Taylor Ridge area because, according to Johnson, he had marijuana buried in the woods there. Johnson said that, once there, Rogers asked if Johnson would accept oral sex in exchange for some marijuana. Johnson said he refused, got out of the car, and walked off. Johnson claimed that he heard two gunshots about two minutes later, saw a tan truck a few minutes after that, and began to run because he was scared. He also told the police that he injured his

---

[3] The recording of this interview was lost and the trial court recreated the substance of that interview by admitting a written summary of it.

feet and ankles while running through the woods. Johnson repeatedly denied shooting Rogers.

At trial, Rogers's widow and a friend both testified that Rogers was never seen smoking marijuana, did not like drugs, and was bothered by cigarettes.

2. In his sole argument on appeal, Johnson argues that the evidence was insufficient to sustain his convictions for malice murder and armed robbery. We disagree.

When reviewing the sufficiency of the evidence, this Court must view the evidence in the light most favorable to the verdict. *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). Under both former OCGA § 24-4-6, in effect at the time of Johnson's trial, and current OCGA § 24-14-6, "in order to warrant a conviction based solely upon circumstantial evidence, the proven facts must be consistent with the hypothesis of guilt and must exclude every reasonable theory other than the guilt of the accused." *Roberts v. State*, 296 Ga. 719, 721 (1) (770 SE2d 589) (2015) (citation omitted). But the evidence does not have to exclude every

conceivable inference or hypothesis, only those that are reasonable. See *Debelbot v. State*, 305 Ga. 534, 538 (1) (826 SE2d 129) (2019). It is for the jury to determine whether an alternative hypothesis is reasonable, and where a jury finds that the circumstantial evidence excluded every reasonable hypothesis save that of guilt, we will not disturb that finding unless it is insupportable as a matter of law. See *Brown v. State*, 304 Ga. 435, 437 (1) (819 SE2d 14) (2018).

(a) *The evidence was sufficient to support the malice murder conviction.*

Here, the evidence shows that Johnson was the last person seen with Rogers before his death, which was the result of an execution-style gunshot to the back of his head. Although Johnson attempts to diminish the testimony of several witnesses who placed Johnson with Rogers, Johnson's own statement to the police was that he was with Rogers just prior to Rogers's death. Johnson denied shooting and killing Rogers, but the jury was entitled to reject Johnson's claim for several reasons. First, Johnson gave inconsistent statements to police about whether he saw Rogers on

9

the night of his death ☐ initially denying seeing Rogers on the night of his death and later admitting to being with Rogers until minutes before his death. Second, Johnson claimed that he and Rogers travelled to the Taylor Ridge area to complete a marijuana purchase, but the evidence showed that Rogers never smoked marijuana and could not even tolerate cigarette smoke. Third, Johnson gave inconsistent explanations to police for his physical distress after Rogers's death ☐ initially claiming that he was assaulted and abducted by three men and later saying that he suffered his injuries while running through the woods out of fear of Rogers's purported killer. Based on this evidence, the jury was not required to find as reasonable the hypothesis that Johnson was with Rogers just before his death but had no involvement in his killing. Therefore, the evidence was sufficient to authorize the jury to find Johnson guilty of malice murder.

(b) *The evidence also was sufficient to support the armed robbery conviction.*

Under Georgia law, "[a] person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon[.]" OCGA § 16-8-41 (a). The State must prove that the defendant's use of the weapon occurred prior to or contemporaneously with the taking. See *Bates v. State*, 293 Ga. 855, 857 (2) (750 SE2d 323) (2013); *Fox v. State*, 289 Ga. 34, 36 (1) (b) (709 SE2d 202) (2011).

Here, the indictment charged that Johnson committed armed robbery by taking United States currency from Rogers by use of a firearm. The evidence, though circumstantial, was sufficient to establish this offense. Prior to his death, Rogers had three dollars in his wallet, and Rogers did not have his wallet when his body was found in Taylor Ridge. Johnson argues that nothing shows that Rogers's wallet was taken from him, as he could have lost or misplaced it. But the evidence shows that when Flores gave Johnson a ride, which Johnson admitted occurred after he left Taylor Ridge,

11

Johnson gave Flores three dollars for gas money. This evidence was sufficient to establish that Johnson took Rogers's money from him.

Because there is sufficient evidence to show that Johnson murdered Rogers by shooting him, there is necessarily sufficient evidence that Johnson had a firearm. Two hypotheses thus emerge from the evidence □ either Johnson first took the money and then brandished his gun, or he brandished his gun and then took the money. Johnson would not be guilty of armed robbery under the first scenario, because the theft would have been complete before force was used against Rogers. See, e.g., *Johnson v. State*, 288 Ga. 771, 773 (1) (a) (707 SE2d 92) (2011). But he would be guilty under the second scenario. See *Hester v. State*, 282 Ga. 239, 240 (2) (647 SE2d 60) (2007) ("It is well-settled that a defendant commits a robbery if he kills the victim first and then takes the victim's property.") (citation and punctuation omitted)). The issue then is whether the jury was entitled to reject the first scenario as unreasonable.

We conclude that the jury was so authorized. There is no dispute that Johnson had scratches on him, his jeans were torn, and

12

he had trouble walking in the hours after his encounter with Rogers. This evidence supported the natural inference that Johnson had been in a struggle with Rogers. The reasonable conclusion the jury could draw was that Johnson had his firearm out in an attempt to rob Rogers, a struggle ensued that eventually led to Rogers's death, and Johnson took the money before or after shooting and killing Rogers. In reaching that conclusion, the jury was authorized to conclude that it was unreasonable that Johnson had already taken money from Rogers before Johnson took his firearm out, struggled with Rogers, and killed him. Consequently, the evidence was sufficient to authorize Johnson's armed robbery conviction. See *Gibbs v. State*, 295 Ga. 92, 95 (1) (757 SE2d 842) (2014) (jury was authorized to reject defendant's claim that he took victim's property when he found the dead victim and accept the State's evidence that suggested that property was taken "just prior to, or in any event, near the time of [the defendant's] fatally beating and shooting [the victim]"); *Blevins v. State*, 291 Ga. 814, 815-817 (733 SE2d 744) (2012) (evidence was sufficient to support armed robbery conviction

13

where evidence suggested that the victim may have been wearing a watch shortly before his death, which was caused by blunt force trauma, and defendant was found with the watch soon after). Compare *Fox v. State*, 289 Ga. 34, 37 (1) (b) (709 SE2d 202) (2011) (concluding that the evidence was insufficient to support armed robbery conviction where there was no evidence that might support an inference that the defendant had to confront the victim, who was found dead in a room next to the kitchen, before taking the victim's property that was located in the kitchen).

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 7, 2019.
Murder. Catoosa Superior Court. Before Judge Wood.
*Jennifer E. Hildebrand*, for appellant.

14

*Herbert E. Franklin, Jr., District Attorney, Christopher A. Arnt, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Michael A. Oldham, Matthew B. Crowder, Assistant Attorneys General*, for appellee.