310 Ga. 567
FINAL COPY

S20A1383.  SCHELL v. THE STATE.

BOGGS, Justice.

Appellant Eugenia Schell challenges her 2016 convictions for malice murder and other crimes in connection with the death of her mother, Willie Jo Vaughn.[1] In her sole enumeration of error,

---

[1] Vaughn was killed on March 26, 2015. On July 8, 2015, a Wayne County grand jury indicted Appellant for aggravated stalking on November 6, 2014 and March 26, 2015 (Counts 1 & 2), making a false statement to law enforcement (Count 3), malice murder (Count 4), felony murder based on aggravated stalking (Count 5), false imprisonment (Count 6), kidnapping (Count 7), and making terroristic threats (Count 8). At a trial from September 26 to 28, 2016, the jury found Appellant guilty of all charges. The trial court sentenced Appellant to two consecutive life sentences for malice murder (Count 4) and kidnapping (Count 7), ten years consecutive for aggravated stalking (Count 1), five years consecutive for making a false statement (Count 3), and five years consecutive for terroristic threats (Count 8). The counts for felony murder (Count 5), aggravated stalking (Count 2), and false imprisonment (Count 6) were merged for sentencing purposes. The felony murder count, however, was actually vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369, 373 (434 SE2d 479) (1993).The State has not challenged Appellant's sentences. See *Dixon v. State*, 302 Ga. 691, 697-698 (808 SE2d 696) (2017). On October 25, 2016, Appellant filed a motion for new trial, which she amended through new counsel on August 15, 2018. After a hearing on June 20, 2019, the trial court denied the amended motion for new trial in an order filed on April 21, 2020. Appellant filed a timely notice of appeal to the Court of Appeals. The case was transferred to this Court, was docketed to the August 2020 term, and was submitted for a decision on the briefs.

Appellant contends that the evidence was legally insufficient to support her convictions. We affirm.

Viewed in the light most favorable to the verdicts, the evidence at trial showed the following. Appellant had a demonstrated history of abuse and violence toward her mother. This pattern of behavior led to a permanent protective order being issued against Appellant on February 9, 2011. Pursuant to the order, Appellant was not permitted to have contact with Vaughn absent her express permission.

Sometime later, Vaughn invited Appellant to live with her at her home. In October 2014, however, Vaughn initiated eviction proceedings against Appellant. Vaughn went to stay with her youngest daughter, and Appellant was given a timeframe to vacate Vaughn's home. In response, Appellant left a voicemail for Vaughn stating that if Vaughn returned to the house, Appellant "would shoot first and ask questions later." Vaughn had the locks changed and a spare key for the new locks hidden somewhere outside the house by her grandson.

Vaughn was afraid of Appellant. She told her pastor that Appellant threatened to kill her multiple times. Appellant had threatened to burn Vaughn's house down with her inside of it. Vaughn regularly told her friends that if something ever happened to her, they should tell the police that Appellant did it. Shortly before evicting Appellant, Vaughn even went to her neighbor to get her gun that he kept for her because she feared for her life.

On November 6, 2014, Appellant sat in a car in Vaughn's driveway and continuously honked the horn while Vaughn was inside the house. Virginia Little, one of the two neighbors to witness this event, went inside the house to find Vaughn. Little found Vaughn looking out the window trying to see the vehicle's tag number, and Vaughn did not know why Appellant was there. Appellant eventually stopped honking the horn and drove away. Vaughn filed a police report, and a warrant was issued for Appellant's arrest.

On March 25, 2015, Appellant was seen by the same two neighbors walking out the back door of Vaughn's home toward a car;

3

Vaughn was in the driver's seat. Around 9:00 a.m. the next morning, March 26, a different neighbor saw Appellant in Vaughn's front yard with Vaughn, who seemed unusually depressed. Just before 1:00 p.m. that same day, Vaughn was seen alone at the drive-through of her local bank. She then went to a friend's house and stayed until a little after 2:00 p.m. At about 4:00 p.m., Appellant was seen driving Vaughn's car with Vaughn in the back seat. Around 7:00 p.m. that night, Appellant was again seen driving Vaughn's car, heading toward the boat ramp at Upper County Landing, the same boat ramp where Vaughn's body was later found. Witnesses testified that Vaughn had an aversion to water and would not have gone to the boat ramp on her own.[2]

Over the next few days, people accustomed to seeing or hearing from Vaughn did not. Vaughn did not report to work or to services at the church that weekend. Neighbors, who had a good view of her

---

[2] There is some evidence to suggest that Vaughn was alive and in possession of her car at 9:00 that night, at which time she spoke to a fellow church member about finalizing a purchase and indicated that she had to go to her car to get her purse.

home and regularly interacted with her, did not see Vaughn's car in her driveway after March 26. When they went to check on her at her home, they got no response, and all of her doors and windows were locked. On March 29, another longtime friend and neighbor went to the house with the police, who had to use a screwdriver to break into the house because the spare key was not where Vaughn's grandson had left it.

Inside the house, they found televisions on, fans blowing, and Vaughn's dog, which had obviously been locked in a crate without food or water for days. The police found no broken doors or windows or any sign of a struggle. They also found a newspaper dated March 25, 2015, and an unopened vial of albuterol, which is used to treat asthma; Appellant is asthmatic, but Vaughn was not. The police also found champagne flutes, photo albums with every picture of Vaughn removed, and Appellant's child's baby book strewn across Appellant's old room. Vaughn had a reputation as a teetotaler, and her other daughters found the state of the room unusual.

Having heard the news of Vaughn's disappearance, Veronica

5

Thomas, a friend of Appellant's, called her. When Thomas remarked, "I didn't know your mama was still driving," Appellant responded with emphasis, "*Was* driving." Thomas was troubled by this response. While Vaughn's neighbors and other family had been looking for her continuously since her disappearance, Appellant only started making contact with her family approximately five days after Vaughn disappeared. When Appellant did eventually make contact, it was only to complain about her own portrayal in the media.

On March 30, Appellant voluntarily went to the police to speak to them about Vaughn. During the interview, she repeatedly stated that she had not been to Vaughn's house since her eviction in October 2014. Despite being confronted with several witnesses placing her at Vaughn's house in November 2014 and March 2015, Appellant continued to deny ever being there. She maintained this defense during trial.

On April 3, Vaughn's vehicle was found submerged at the bottom of a boat ramp at Upper County Landing in Wayne County.

Vaughn's body was found lying face down across the back seat with the same clothes on that she was seen wearing on March 26, with the addition of a sweater. A white, vinyl-type material was found draped over her body. A plastic bag was found near her head. Her purse, a coin purse with her identification cards, her walking cane, dentures, and an open can of Coke were also found in the car with her. Although investigators had found no Coke at Vaughn's, at Appellant's home they found Cokes and a receipt for a pack of Coke dated March 26, 2015.

When investigators powered on the car, the lights and windshield wipers, set to high, came on automatically. It had been raining on March 26 and 27, 2015. When police found the car, the transmission was in "park," but the ignition was in the "on" position. The child safety locks were also engaged. The driver's side window was down and the seat was in an extremely far forward position. Appellant was much smaller than Vaughn and admitted that there was no way she could carry her mother given their difference in size. Also, the crime scene investigator testified that due to her size

relative to the interior of the vehicle, Vaughn would not have been able to move between the front and back of the vehicle. Large rocks taken from the banks of the boat ramp had been placed on the trunk of the vehicle to keep it from floating.

The medical examiner found that Vaughn died under "objectively suspicious circumstances." The evidence suggested to him that she died of asphyxiation. Because he could not determine whether the asphyxiation occurred due to suffocation, drowning, or strangulation, however, he ruled that her cause of death was "unspecified violence." He concluded that the manner of death was homicide.

The toxicologist only found substances in her body consistent with the medications she was taking and — given the extent of decomposition — did not find her blood alcohol content to be significant. However, Appellant's ex-husband, a doctor, testified that Appellant had told him on multiple occasions that she knew a chemist who had agreed to provide her with an untraceable chemical to kill someone if she ever needed it. Appellant's ex-husband

believed she was telling the truth, and the medical examiner testified that such traceless lethal drugs exist.

In her sole enumeration of error, Appellant challenges the sufficiency of the evidence to support her convictions.[3] Specifically, Appellant argues that evidence of her mere presence with Vaughn on March 26, 2015, does not prove her involvement in the murder. Appellant also argues that there is no evidence that Vaughn was prevented from leaving or was taken from one location to another without her permission to support the kidnapping conviction. We disagree.

When reviewing the sufficiency of the evidence as a matter of constitutional due process, we view the evidence in the light most favorable to the verdicts, see *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979), and do not resolve conflicts in

---

[3] Although Appellant challenges the sufficiency of the evidence to support all of her convictions, the felony murder count was vacated by operation of law, and the guilty verdicts for aggravated stalking on March 26, 2015, and false imprisonment were merged for sentencing. As such, Appellant's challenge to these counts is moot, and we limit our sufficiency review to the counts of which she was convicted. See *Lupoe v. State*, 284 Ga. 576, 577 n.2 (669 SE2d 133) (2008).

the evidence, leaving those within the province of the jury, see *Lowery v. State*, ___ Ga. ___ (___ SE2d ___) (2020). In addition, as a matter of Georgia statutory law, where a conviction is based on circumstantial evidence, as here, the evidence must "not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." OCGA § 24-14-6. Whether an alternative hypothesis is reasonable or whether the circumstantial evidence excludes every reasonable hypothesis save that of guilt is left to the jury, and this Court "will not disturb that finding unless it is insupportable as a matter of law." *Johnson v. State*, 307 Ga. 44, 48 (834 SE2d 83) (2019).

Viewed in this manner, the evidence shows that Appellant had a history of threats and abuse toward Vaughn and was evicted from Vaughn's home in October 2014. After being evicted, Appellant threatened to shoot Vaughn if Vaughn came back to the home. In November 2014, Appellant drove to the home in violation of the February 2011 protective order and continuously honked the horn of her car, harassing Vaughn.

The evidence also authorized the jury to find that in the late hours of March 26, 2015, with Vaughn in the back of her car and the child safety locks activated, Appellant drove the car to Upper County Landing — where Vaughn would not have gone on her own — submerged the vehicle in the water with Vaughn trapped inside, and placed rocks on the trunk of the car to keep it there. The evidence also suggests that before submerging the vehicle in the river, Appellant could have killed Vaughn with an untraceable substance, suffocated her with the plastic bag found next to Vaughn's head in the back seat of the car, or rendered Vaughn unconscious so that she then drowned. Given the above and the lack of evidence of a struggle at the house, the fact that Appellant could not have moved Vaughn on her own, and Appellant's awareness of Vaughn's vigilant neighbors, the jury could have reasonably concluded that Vaughn was alive when she entered the back seat of her vehicle, was driven away by Appellant, and at some point was kept in the vehicle against her will.

Appellant never aided in the search for her mother and made

a suspicious comment to a friend after Vaughn's disappearance. When interviewed by police about her mother's death, Appellant repeatedly denied ever being present at Vaughn's home after October 2014, despite multiple witnesses placing her there on multiple occasions. Thus, the evidence presented at trial was both sufficient to allow a rational jury to find beyond a reasonable doubt that Appellant was guilty of all of the crimes for which she was convicted as required by due process and to reject any hypothesis save that of Appellant's guilt for said crimes as required by OCGA § 24-14-6.

*Judgment affirmed. Melton, C. J., Nahmias, P. J., and Peterson, Bethel, Ellington, and McMillian, JJ., concur. Warren, J., not participating.*

DECIDED DECEMBER 7, 2020.
Murder. Wayne Superior Court. Before Judge Kelley.
*Joseph C. Timothy Lewis*, for appellant.
*Jacquelyn L. Johnson, District Attorney, Thomas E. Buscemi, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, William C. Enfinger, Assistant Attorney General*, for appellee.